D. A. NUNN v. W. E. MAYES.

No. 1637.

1. **Evidence to Rebut Argument.**—Letters of plaintiff's attorney and ex parte affidavits are not admissible to rebut insinuations of fraud and bad faith made against defendant by opposing counsel in his opening statement to the jury.

2. **Same—Rejection of Cumulative.**—Where rejected testimony is substantially embraced in other portions of the witness' evidence admitted without objection, its exclusion is not material error.

3. **Same—Hearsay—Pedigree.**—To prove pedigree, hearsay is admissible when based upon information derived from deceased relatives of the party in question, or from his family history, etc.; but unless it is shown to come from one or the other of these sources, it should be rejected.

APPEAL from Foard. Tried below before Hon. G. A. BROWN.

B. P. Eubanks, C. F. Martin, and D. A. Nunn, for appellant.—1. The court erred in sustaining objections to and ruling out certain letters of A. M. Carter and certain affidavits attached, because plaintiff's counsel had made the opening statement to the jury, and charged, in effect, that defendant had practiced fraud and bad faith in purchasing this

land by taking advantage of friends and confidential communications; whereby he sought to and did probably prejudice the defendant's case.

2. The declarations of a deceased party may be given in evidence to prove family history, such as births, deaths, marriages, and relationship, by any witness who may have heard declarant speak on such subjects. A member of a family may give testimony from his own consciousness or the traditions of the family as to family pedigree and relationship, without being required to show more than that he was a member of such family, and therefore in position to be possessed of such family knowledge, and such testimony may relate to family history and facts antedating the witness' birth. 1 Greenl. on Ev., sec. 103; 18 Am. and Eng. Encyc. of Law, 257; DeLeon v. McMurray, 23 S. W. Rep., 1039; Byers Bros. v. Wallace, 87 Texas, 503.

*Stephens & Huff* and *Carter & Lewright,* for appellee.—1. The letters of A. M. Carter and the ex parte affidavits were not relevant or competent, and the court properly excluded the same.

2. The court did not err in excluding the depositions of Henry Aldridge and J. S. Stewart, to the effect, that they had heard George Aldridge (father of Henry) say that Isaac Aldridge was his nephew, and had died in the Mexican war without ever having been married, because the defendant did not prove any relationship between George and Isaac except by the declarations of George. 1 Whart. on Ev., sec. 218; Abb. Trial Ev., p. 91, sec. 36; 5 Am. and Eng. Encyc. of Law, 362; 7 Id., 74; Blackburn v. Crawford, 3 Wall., 175; Smith v. Shin, 58 Texas, 3.

HEAD, Associate Justice.—This is an action of trespass to try title, instituted by appellee to recover from appellant 984 acres of land, a part of the one-third league granted to colonist Isaac Aldridge. Appellee claimed under an Isaac Aldridge, who married Polly Worthington, in Georgia, sometime prior to 1835. Appellant claimed under an Isaac Aldridge, who was born in Rhode Island, and went to Georgia when quite young, where he lived with his uncle, George Aldridge, until 1835, when he came to Texas, and died, without ever having been married.

The verdict finding that the Isaac Aldridge under whom appellees claim was the one to whom the grant was made, is well supported by the evidence; as would have been one in favor of appellant, had it been rendered.

We are of opinion no reversible error is shown in the admission of the certified copy of the marriage license and certificate thereto from Putnam County, Georgia, showing the marriage of Isaac Aldridge and Polly Worthington, under whom appellee claims. Without considering the objections made to this certificate, we think the legality of this marriage was sufficiently shown by other evidence, in so far as it was material in this case. Mrs. Emeline Adams testified to the marriage

of her father, Isaac Aldridge, with her mother, Mary Worthington, in Georgia; and we find nothing in the record to contradict this. The admission of the copy of the marriage license and certificate referred to in the first assignment was therefore immaterial error, if error at all. Boone v. Miller, 73 Texas, 557.

We find no error in the exclusion of the letters of A. M. Carter and certain ex parte affidavits, referred to in the second assignment, which it is claimed should have been admitted to rebut the imputations of fraud and bad faith made by Carter, as counsel for appellee, against appellant in his preliminary statement of his case to the jury. We think the evidence should be restricted to the material issues made by the pleading, and we know of no rule which would authorize the admission of ex parte affidavits and letters solely to disprove insinuations made by opposing counsel.

James S. Stewart, a witness for appellant, was allowed to testify, without objection, as follows: "My age is 60 years; reside in Montgomery County, Arkansas; have resided here one year. I was not personally acquainted with Isaac Aldridge; only knew of him by what I heard his uncle say about him. I knew George Aldridge in Hurd County, Georgia. Have known him all my life. I do not know whether Isaac Aldridge was a married man, but his uncle often stated to me that he was not. I never knew Isaac Aldridge personally. I was never personally acquainted with John Aldridge, but only knew him by what I heard his father say of him. Never saw either Isaac or John Aldridge in my life. I lived in one and one-half or two miles of George Aldridge, while I lived in Georgia. They were all under good character. John and Isaac Aldridge were first cousins. I knew Henry Aldridge, a son of George Aldridge. I knew him all my life in the State of Georgia. George Aldridge is dead. He died in Hurd County, Georgia, in 1872, at the age of 82 years. I know Henry Aldridge. He resides in Montgomery County, Arkansas. His postoffice is Stacy, Arkansas. As far as I know, Henry Aldridge is nearest of kin to Isaac Aldridge. * * * I have no knowledge that John Aldridge's relatives ever did anything with trying to get his estate. I have always understood that Isaac Aldridge was a single man. I derived my knowledge of these facts from George Aldridge, the uncle of Isaac Aldridge. I heard George Aldridge say that John and Isaac Aldridge died, or were killed in the Texas and Mexican war. This conversation was in Hurd County, Georgia. I can not say that any one else was present at the time he made such remarks. George Aldridge was father of John and uncle of Isaac Aldridge."

In addition to this evidence, the appellant offered the following answers from the deposition of this witness:

"He (referring to Isaac Aldridge) was generally represented to be a single man.

"The last I knew of him, he went to the Texas and Mexican war.

"To the best of my information, they (referring to Isaac and John Aldridge) left Georgia about the year 1835.

"As far as I know, Henry Aldridge is the only heir of John Aldridge.

"Isaac Aldridge was never married, and so left no children, so far as I know."

Which were excluded, on objection of appellee that the evidence was hearsay and incompetent.

We are of opinion that no reversible error is shown in this action of the court; inasmuch as all of these answers are substantially embraced in that part of the witness' evidence which was admitted.

There is also a clause in the opinion of our Supreme Court, recently rendered in the case of Byers Bros. v. Wallace, 87 Texas, 503, which would require the exclusion of this evidence, upon the ground that the only knowledge the witness had of the matters testified about was derived from George Aldridge, who, at the time he made the declarations, was the heir of the one to whom he was thus showing himself to be related; but as we are not fully satisfied as to the extent to which the opinion referred to was intended to go upon this point, nor as to its soundness, we prefer to rest our decision upon the ground first stated.

The clause of the opinion referred to is as follows: "The court also admitted, over objections of defendants, the declarations of William Wallace, through whom the plaintiffs claim title, to the effect that he had a nephew in Texas named William Wallace, who was killed at Goliad, in the Fannin massacre. The evidence shows, that if the declarations were true, the declarant was the only heir of the party to whom the declarations related. The declaration must have been made after the supposed death of the nephew, and goes directly to establish the title of the declarant as the sole heir of the nephew. It was a self-serving declaration, made in the interest of the declarant, and should have been excluded. 1 Whart. on Ev., sec. 207; Plant v. Taylor, 7 H. & H., 237; Morrill v. Foster, 33 N. H., 370."

The next clause of the opinion is as follows: "The plaintiffs were permitted to prove by William Wallace, one of the plaintiffs, over defendants' objections, that according to his family history, William Wallace, the father of witness, under whom plaintiffs claimed title, had a nephew named William Wallace, who went to Texas in the spring of 1835 for the purpose of enlisting in the Mexican war, and was killed in 1836, at what was known as Fannin's massacre."

This evidence was held admissible, from which it would seem that the court makes a distinction between cases in which the witness gives the name of the deceased relative who made the declaration, and those in which he merely testifies to family history, without giving his authority.

In this case, it is manifest that the witness Stewart only purported to testify to facts which were told him by George Aldrich, and he

specifically gives the name of his informant. The declarant, George Aldrich, occupied almost identically the position with reference to the deceased, Isaac Aldridge, that the declarant William Wallace occupied to the deceased William Wallace in the case decided by our Supreme Court; and his evidence would therefore seem to come within the first clause of the opinion in that case quoted by us.

We are not satisfied, however, that the Supreme Court intended to establish this distinction; because, further on in the opinion, the idea seems to be conveyed that family history and the declarations of a deceased member of a family are admitted on the same ground, by the use of the following language: "Upon the same subjects, the family history and the declarations of a deceased member of the family are equally admissible. The weight to be given to each depends upon the circumstances, and it is a question for the jury, not a question of admissibility."

Upon principle, we believe the latter conclusion is the sounder one, and that the fact that the declarant is interested in the succession at the time he makes the declarations, is no ground for their exclusion.

In 1 Greenleaf, section 103 (15th edition), in treating of this question, it is said: "This rule of admission is therefore restricted to the declarations of deceased persons who were related by blood or marriage to the person, and therefore interested in the succession in question."

Also 1 Wharton's Evidence (3rd edition), section 214: "But even though declarations after litigation has begun should be held to be inadmissible, they will not be excluded on account of their having been made with the express view of preventing disputes, or in direct support of the declarant's title, or from the declarant being in the same situation touching the matter in contest with the party relying on the declaration." Also see Louder v. Schluter, 78 Texas, 103; Boone v. Miller, supra; Fowler v. Simpson, 79 Texas, 614.

In this last case it is said: "The defendant Simpson, as appellant, assigns as error a ruling of the court in permitting John J. Fowler, one of the plaintiffs, to testify to the declaration of his father, James Burton Fowler, that he was the surviving brother and only heir of Sam and John Fowler, made before he had conveyed the land to plaintiffs. It is contended, that the declarations of James Burton Fowler made at the time he claimed to own the lands were not competent evidence. James Burton Fowler was dead when the testimony was given. With regard to the admission of hearsay evidence in cases of pedigree, Mr. Greenleaf says, that the law resorts to it 'upon the ground of the interest of the declarants in the person from whom the descent is made out, and their consequent interest in knowing the connections of the family. * * * The rule of admission is therefore restricted to the declarations of deceased persons who were related by blood or marriage to the person, and therefore interested in the succession in question.'"

It can not be contended either in this or the Wallace case, that the declarations should have been excluded on the ground that they were made post litem motam. 1 Whart., sec. 213.

In behalf of appellant, the witness Henry Aldridge, without objection, was allowed to testify as follows: "My name is Henry Aldridge; age 52 years; reside in Sebastian County, Arkansas. My father's name was George Aldridge, and I am the only surviving child of my father. My father had one brother, whose name was James Aldridge. I am unable to state which was the older, my father or his brother James. James Aldridge was married, and had only one child, whose name was Isaac Aldridge. Isaac Aldridge was born in the State of Rhode Island, as I was informed by my father. He lived with his father and mother until their death. After this he lived with my father. I do not know how old he was when his father and mother died. He was but a small child. After their death Isaac lived with my father, and he raised him. My father died in Hurd County, Georgia. At the time of his death he was 82 years old."

The appellant also offered to read the following answers from the deposition of this witness, which were excluded upon objection interposed by appellee, on the ground that it was hearsay and incompetent, and because the witness shows he was not born till long after the war in which he says Isaac and John Aldridge were killed, and it is impossible for him to know the facts testified about, viz: "Isaac Aldridge was never married, and was a single man. My father came from Rhode Island to Georgia. Isaac afterwards also came, and went from there to Texas, which was either in 1835 or 1836, and enlisted in the war of Texas against Mexico. Isaac Aldridge was killed in said war, and has not been seen or heard of since. A half-brother of mine, John Aldridge, went with Isaac and enlisted in the war with Mexico in 1835 or 1836, and he was also killed in said war. They went from Georgia to Texas for the purpose of fighting for Texas against Mexico, so I am informed. The said John Aldridge was never married, so I am informed. Isaac Aldridge was the only child of his father's family, and I am his nearest of kin and his heir. Isaac Aldridge was never married, and had no wife, and had no child or children. His father and mother died when he was a small child, and he had no brother and sisters."

From the age of this witness, as given by himself, it will be seen that he was not born until four years after the death of the Isaac Aldridge about whom he was testifying, and that he nowhere gives the source of his information as to the facts about which he proposed to testify.

To prove pedigree, hearsay evidence is admissible when based upon information derived from deceased relatives of the party in question, or from his family history, etc.; but it must come from one or the other of the well recognized sources, to relieve it from the general rule. In this case, the witness clearly shows that he is testifying to matters his knowledge of which must have been derived from others; and in order

to have made his statements in reference thereto admissible, the sources of his information should have been disclosed.   Abb. Trial Ev., 91.

We are therefore of opinion, that the evidence as offered was hearsay and inadmissible, although the circumstances indicate that, had the attempt been made, some of it could have been shown to have been derived from sources which would have required a different ruling.

We think the deposition of the witness Cochran was properly admitted to prove the execution of the deed from Emeline Adams to Cundiff, and was sufficient for that purpose.   We think it could fairly be treated as rebutting evidence; but if not directly such, it was within the discretion of the court to admit it at any time before the argument closed.

The judgment of the court below will be affirmed.

*Affirmed.*

Delivered January 30, 1895.

Writ of error refused.