EVA C. HATCHETT v. J. M. HATCHETT ET AL.

Decided January 25, 1902.

**Note—Antenuptial Contract—Consideration—Finding by Jury.**

Where the court submitted to the jury the question whether the note sued on was given to plaintiff as an inducement to procure marriage, and if not, for what was it given, and the jury answered that it was given only as a bridal present and had no consideration, this was equivalent to finding that the note was not given in consideration of marriage, and plaintiff was properly denied a recovery thereon.

Appeal from Erath. Tried below before Hon. W. J. Oxford.

*Parker & Carlton, Daniel & Keith,* and *A. P. Young,* for appellant.

*Martin & George,* for appellee.

HUNTER, ASSOCIATE JUSTICE.—This suit was brought by Mrs. Eva C. Hatchett against her husband, J. M. Hatchett, on a promissory note for $5000 alleged to have been executed and delivered to her on the 15th day of October, 1900, in consideration of her promise to marry him on the 17th day of the same month, which, on that day, she did. Other parties were made defendants to the suit to whom the obligor had conveyed his property, amounting in value to about $20,000, for the purpose, as alleged, of defeating her in the collection of the note. The sale was found by the jury to be fraudulent; it was set aside by the judgment, and no assignment of error is made by either side on that branch of the case.

The cause was tried by a jury to whom the court submitted special issues, which being answered, the plaintiff moved for judgment thereon for the debt, which was denied, but judgment was rendered for the defendant upon the ground that the verdict established that there was no consideration for the note.

The defendant, by his attorneys and by guardian ad litem, pleaded non est factum; insanity of Hatchett at the time he executed the note; undue influence over the defendant in procuring the execution of the note, and want of consideration. He, by his attorneys, also filed a cross-action for divorce, but his prayer therefor was denied.

The jury found that J. M. Hatchett executed and delivered the note sued on, and that he was sane when he did so, and was sane when he married the plaintiff. The sixth special issue and verdict thereon was as follows: "If you find in answer to question number 5 that the said J. M. Hachett executed and delivered to plaintiff the note sued on in this case, you will then find what, if anything, was the consideration of said note; that is, you will find the real intention of the parties to said note. Was it given as an inducement to procure the marriage of plaintiff or not, and if not for what was it given?" Answer: "In an-

swer to number 6 we find the note was given only as a bridal present, and had no consideration and is null and void."

The first assignment of error is as follows: "The court erred in not construing and interpreting the answer of the jury to question number 6 * * * to be a finding that the note sued upon was given in contemplation of marriage, for the reason that a promise to give to an intended and contemplated bride is not a gift in law, but a contract in consideration of marriage, and the legal effect of said finding is that said note was given in contemplation and in consideration of marriage."

This raises the only question in the case. The meaning of the verdict when read in the light of the question asked by the court is plain. The court asked the jury the question: "Was it given as an inducement to procure the marriage of plaintiff or not; and if not for what was it given?" The meaning of the answer is: "It was not given as an inducement to procure the marriage of plaintiff," but "only as a *bridal present,* and had no consideration and was null and void." The jury were not requested to state for what it was given unless they found that it was *not* given "to procure the marriage of plaintiff." Hence the fact that they found for what it was given necessarily means that they found that it was *not* given in consideration of marriage. The note was as follows:

"Stephenville, Tex., Oct. 15, 1900.

"On or before Jany. 15, 1901, I promise to pay to Mrs. Eva C. Estes the sum of $5000. (five thousand dollars) with interest at the rate of 8 per cent per annum if not paid at maturity. The marriage of Mrs. Eva C. Estes and myself, which is to take place Oct. 17, 1900, shall in no way retard the payment of this note, but shall be a further guarantee of payment. The note or money arising from payment of same is to be the separate property of Mrs. Eva C. Estes or Mrs. J. M. Hatchett, and shall not be considered or used as community property, but shall be paid to her or her order, to be used in any way she may dictate. If this note should be placed in the hands of an attorney for collection the usual 10 per cent shall be allowed. The full amount of this note shall be paid without defalcation or discount.

(Signed)     "J. M. Hatchett."

The plaintiff's oral testimony is to the effect that Mr. Hatchett had frequently told her that he intended to make her independent of her children who opposed their marriage, if she would marry him, and when the note was written and signed at her house on the night of the 15th, according to her oral testimony, he said to her on parting, after they had set the wedding day for the 17th: "Now don't go back on me." She answered: "I won't; or if I do I will return the note." It was then agreed, she testifies, that before he engaged the preacher he should go to the postoffice, and if he received the note he was not to come, but if not he was to get the preacher and come on and she was

to marry him. She further testified orally, that when he arrived that evening with the preacher he said to her: "I went to the postoffice, and not receiving the note I knew it was all right," and they were then married.

The oral evidence of the plaintiff as above stated is not contradicted by Mr. Hatchett, but the record discloses that before this suit was brought, and up to the time of and during the trial, he had been insane and under treatment for insanity in the State Lunatic Asylum at Austin, and therefore unable to state his version of the affair, although his deposition was taken while an inmate of that institution. His answers, however, indicate that he then knew nothing of the note or of its execution or of the matters inquired about.

Soon after the filing of this suit, however, to wit, on the 29th day of February, 1901, the plaintiff gave her deposition upon ex parte interrogatories propounded by the defendants, in which she stated as follows: "I would have married J. M. Hatchett if he had refused to give me anything of value, but I never asked him to give me anything of value. No, I did not marry Hatchett because he agreed to give me something of value; I married him because I respected him. I respected him is the reason I married him and he wanted me to marry him, which I did. Yes, if Hatchett had been a poor man I would have married him. I did not tell Hatchett at any time that I would not marry him unless he would give me some property. There was no agreement between us as to the amount he was to give me to marry him. Hatchett gave me this note as a bridal present on the 15th day of October, 1900. There was no agreement about it; he just gave it to me of his own free will. There was no agreement beforehand about giving me the note; he gave me the note as a bridal present. I did not ask him to execute any note to me at any time. He was the first to mention it. Mr. J. M. Hatchett told me he wanted to give me a bridal present and gave me the note, and asked me not to say anything about it to any one unless it was absolutely necessary, as it would occasion talk. J. M. Hatchett gave me the note, as already stated, as a bridal present. Nothing was said about love at the time, or business, either."

From this evidence it appears that the plaintiff contradicts herself on this vital issue; and hence if we might read the verdict in the light of the facts in which the jury wrote it, and in which the learned judge considered it, is is equally certain that the jury, when they found that the note was given as a "bridal present," meant that it was not given in consideration of marriage. These terms were evidently borrowed from the plaintiff's deposition, and mean what she first testified, in effect, that it was a mere gift—a nudum pactum.

This, then, being the meaning of the verdict, the law is plain that the plaintiff can not recover on the note for want of a legal consideration. Her own evidence as given in the deposition, though she attempts to

explain it and modify its force in her oral testimony given before the court, was entirely sufficient to defeat her recovery, and she can not complain of the jury and court for adopting it.

We find no error in the proceedings, and the judgment is affirmed.

*Affirmed.*

Writ of error refused.