GIBSON et al. v. DICKSON et al. †
(No. 7347.)

(Court of Civil Appeals of Texas. Dallas. May 29, 1915. Rehearing Denied July 3, 1915.)

1. APPEAL AND ERROR ☜1002 — VERDICT — CONCLUSIVENESS.
    A verdict on conflicting evidence will not be disturbed on appeal.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. ☜ 1002.]

2. EVIDENCE ☜288—PEDIGREE—REPUTATION.
    The relationship of one person to another cannot be proved by declarations of neighbors or acquaintances.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1147, 1148; Dec. Dig. ☜288.]

☜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

† Writ of error pending in Supreme Court.

3. WITNESSES �come414 — IMPEACHMENT — SUPPORTING EVIDENCE.

That a witness testifying that defendant was her own daughter, and that she had given her to a third person, whom defendant claimed was her mother, was impeached, did not render admissible evidence of the general reputation in the neighborhood that defendant was the daughter of the witness.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1287, 1288; Dec. Dig. ⊙⇒414.]

4. APPEAL AND ERROR ⊙⇒1058 — HARMLESS ERROR—EXCLUSION OF EVIDENCE.

Where a witness on the issue of pedigree was permitted to testify to any declarations made by any member or relative of the family, as to the parentage of the person whose pedigree was in issue, error in excluding evidence as to his knowledge of the tradition among the members of the family as to the parentage of the person was not prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4195, 4200–4204, 4206; Dec. Dig. ⊙⇒1058.]

5. TRIAL ⊙⇒365—ISSUES—VERDICT—"NATURAL"—"NATURAL DAUGHTER."

Where the issue raised was whether defendant was the daughter of decedent, or of a third person, an affirmative answer by the jury to a question, "Is [defendant] the natural daughter of [decedent]?" was a finding that defendant was the legitimate child of the decedent, justifying judgment accordingly, though the word "natural" is ambiguous and means either illegitimate or legitimate, for the jury must have understood that the words "natural daughter" referred to a legitimate daughter, though the term also means a daughter born out of wedlock.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 871–874; Dec. Dig. ⊙⇒365.

For other definitions, see Words and Phrases, Natural Child.]

6. TRIAL ⊙⇒365 — SPECIAL VERDICT — CONSTRUCTION—RESORT TO RECORD.

Where a special verdict in response to a question is ambiguous or uncertain, the court may look to the record to interpret it.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 871–874; Dec. Dig. ⊙⇒365.]

7. APPEAL AND ERROR ⊙⇒1051 — HARMLESS ERROR — SPECIAL VERDICT — UNCERTAINTY —STATEMENTS OF JURORS.

Error in admitting, on motion for new trial, statements of jurors as to how they construed a phrase used in a special question submitted to them, was harmless, where the court, under the pleadings and evidence, must give a like construction to the phrase.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. ⊙⇒1051.]

Appeal from District Court, Ellis County; L. F. Hawkins, Judge.

Action by Mrs. Harriett B. Gibson and others against Miss Mary J. Dickson and another. From a judgment against plaintiffs, they appeal. Affirmed.

L. R. Callaway and Ed. J. Gibson, both of Dallas, and Farrar & McRae, of Waxahachie, for appellants. Morrow & Morrow, R. M. Vaughan, and G. D. Tarlton, all of Hillsboro, and Supple & Harding, of Waxahachie, for appellees.

TALBOT, J. The appellants, Mrs. Harriett B. Gibson, joined by her husband, El. J. Gibson, Mrs. Lula M. Raborn, joined by her husband, S. L. Raborn, and Miss Carrie Belle McDaniel, instituted this suit on the 24th day of April, 1913, against the appellee Miss Mary J. Dickson. Thereafter, on the 26th day of April, 1913, the appellants made Mrs. Kate Dickson a party defendant. The appellants Mrs. Harriett B. Gibson and Mrs. Lula Raborn are nieces of W. T. M. Dickson, deceased, and the appellant Miss Carrie Belle McDaniel is his grandniece. The appellants sued, claiming to be the sole surviving heirs of the said W. T. M. Dickson, who died intestate, to recover real and personal property left by the said W. T. M. Dickson at the date of his death of the estimated value of $165,000. Mrs. Kate Dickson is the surviving widow of W. T. M. Dickson and was his third wife, and at the trial the appellants entered a disclaimer as to any right to recover against her. The appellee Mary J. Dickson alleged and contended that she was the legitimate daughter of the said W. T. M. Dickson, deceased, and his second wife, Amelia Josephine Dickson, also deceased. The appellants did not deny that Mary J. Dickson was the legitimate daughter of the said W. T. M. Dickson, if she was the daughter of Amelia Josephine Dickson. So that, the appellants having disclaimed any right to recover as against the appellee Mrs. Kate Dickson, the sole issue in the case, as finally presented, was whether the appellee Miss Mary J. Dickson was the daughter of W. T. M. Dickson's second wife, Amelia Josephine Dickson. The contention of appellee Miss Mary J. Dickson was and is that she was such daughter, and the appellants contend that she is the illegitimate daughter of a woman formerly named Mary Ramsey, now Mary Plew, by some man other than W. T. M. Dickson. The case was tried at the May term of the court, 1914, and the sole issue of fact in the case was submitted to the jury in the following language:

"Is Mary J. Dickson the natural daughter of Amelia Josephine Dickson? This question you will answer 'Yes' or 'No,' as you find the fact to be from the evidence. The burden is on plaintiffs to prove their case as alleged by a preponderance of the evidence. You are the exclusive judges of the facts proved and the credibility of the witnesses."

On the 19th day of June, 1914, the jury returned its verdict answering the question thus propounded in the affirmative. Later, on motion of appellees, judgment was entered in favor of appellees on the verdict of the jury that appellants take nothing by their suit and that appellees recover their costs. Appellants' motion for a new trial being overruled, they appealed.

[1] The first assignment of error is as follows:

"The verdict of the jury is contrary to and not supported by the evidence in this, to wit: That it was clearly established by the great weight and preponderance of the evidence that the defendant Mary J. Dickson is the daughter

⊙⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of one Mary Ramsey, and not the natural daughter or the legitimate daughter of the said Josephine Dickson, deceased, and there is no evidence in the record or adduced at the trial sufficient to support the verdict of the jury."

There was a great deal of testimony introduced upon this issue, and we shall not undertake to quote it or state the substance of it. No useful purpose would be subserved in doing either. It is sufficient to say that it was very conflicting but ample to support the finding of the jury; that, such being the state of the evidence, this court would not be warranted in disturbing the verdict.

[2] The second assignment of error complains of the trial court's action in excluding the testimony of several witnesses offered by the appellants to the effect that it was the common repute and understanding and general reputation in the town of Milford, at the time of her birth, that Mary J. Dickson was the child of Mary Ramsey, and not of Amelia Josephine Dickson, and that said Mary Ramsey had given Mary J. Dickson, when an infant only a few weeks old, to the said Amelia Josephine Dickson, to be raised by her. This testimony was offered, and it was shown that these witnesses had resided in the town of Milford during the year 1873 and for a number of years prior thereto and continuously since; that they were intimately acquainted with W. T. M. Dickson and his then wife, Amelia Josephine Dickson, during said year 1873, and before and up to the time of their respective deaths; that they had known the defendant Mary J. Dickson from the time of her birth, about January, 1873, or December, 1872, to the time of the trial; that they also knew one Mary Ramsey, an unmarried woman, who then lived at what is known as the "Old Mill Place," in said town of Milford; and that the said Mary Ramsey had given birth to a female child at said time. The testimony was excluded on objections of the defendants that it was hearsay, immaterial, and incompetent; that the issue being as to the parentage or pedigree of defendant Mary J. Dickson, and the inquiry not being addressed so as to elicit knowledge of the witness of statements by members or relatives of the family who were deceased, and who were in a position to know the facts, the testimony was inadmissible, because the maternity of Mary J. Dickson could not be established by general reputation in the community. There are two propositions urged by the appellants under this assignment:

First. That, after "the lapse of 40 years, the fact of maternity, like that of pedigree, tradition, or family history, is provable by reputation, and such evidence is an exception to the general rule applicable to hearsay testimony and should not be excluded upon objection that it is hearsay." Second. "The witness Mary Plew, who testified positively that the defendant Mary J. Dickson was her child, being a stranger in Ellis county at the time of the trial, and her testimony being assailed by witnesses introduced by appellees, who impeached her veracity, the evidence offered by appellants, as shown by their second assignment of error, was

admissible also for the purpose of corroborating the testimony and supporting the credibility of said witness Mary Plew."

We hold that neither of these contentions is well taken. The fact in issue was one involving pedigree or relationship, and whatever may have been the law upon the subject in some jurisdictions, as reflected by the earlier decisions, it seems now to be well settled that such an issue cannot be established by common repute or general reputation. The well-recognized exception to the use of hearsay evidence, as is now almost universally held, does not justify the admission of such testimony. It is pointed out in Mr. Chamberlayne's Modern Law of Evidence, § 2916, that:

"Notwithstanding the position of the earlier law, in admitting on an issue of pedigree, the unsworn statements of persons, such as attending physicians, intimate friends, those living in the family, trusty servants, and the like, shown to be possessed of adequate knowledge or of opportunities for acquiring it, the law is well settled at the present day that only those connected with the family by blood or marriage are competent declarants under the present exception to the hearsay rule; that neighbors and friends, regardless of the intimacy enjoyed by them, are not regarded as competent declarants under the rule in question."

In thus declaring the present-day rule, Mr. Chamberlayne refers in his notes to some of the cases cited by appellants in support of their position as announcing the "earlier law." But the law has never been in this state other than that the "rule of admission" is restricted to the declarations of deceased persons, who were related by blood or marriage to the person whose relationship was sought to be established. The rule and the reasons for it, as stated by Mr. Wharton and Mr. Greenleaf in their respective works on the Law of Evidence, is recognized and adopted by the Supreme Court of this state.

Mr. Wharton (section 201) says:

"Pedigree, from the nature of things, is open to proof by hearsay in respect to all family incidents as to which no living witnesses can be found. If what has been handed down in families cannot in this way be proved, pedigree could not in most cases be proved at all. Nor is such tradition in its best sense open to the objections applicable to hearsay. The recognition of such relations forms part of the family atmosphere. The existence of such relationship constitutes the family. What is said by one member of the family to another as to pedigree may be received to prove such pedigree."

Mr. Greenleaf (section 114, 16th Ed.), after stating that as a preliminary to the admission of declarations by a member of a family, or reputation in the family, a necessity for resorting to such evidence must first appear, and that it was long unsettled, whether any and what kind of relation must have subsisted between the person speaking and the person whose pedigree was in question, and that there are reported cases in which the declarations of servants, and even of neighbors and friends have been admitted, proceeds:

"But it is now settled that the law resorts to hearsay evidence in cases of pedigree, upon the ground of the interest of the declarants in

the person from whom the descent is made out, and their consequent interest in knowing the connections of the family. The rule of admission is therefore restricted to the declarations of deceased persons who were related by blood or marriage to the person, and therefore interested in the succession in question."

That the rule, as thus stated by these eminent law writers on the law of evidence, is the recognized rule in this state, is clearly shown by the following decisions of our appellate courts: Boone v. Miller, 73 Tex. 557, 11 S. W. 551; Fowler v. Simpson, 79 Tex. 611, 15 S. W. 682, 23 Am. St. Rep. 370; Byers v. Wallace, 87 Tex. 503, 28 S. W. 1056, 29 S. W. 760; Nehring v. McMurrian, 94 Tex. 45, 57 S. W. 943; Summerhill v. Darrow, 94 Tex. 71, 57 S. W. 942; Clark v. Kirby (Civ. App.) 25 S. W. 1096; De Leon v. McMurray, 5 Tex. Civ. App. 280, 23 S. W. 1038; Nunn v. Mayes, 9 Tex. Civ. App. 366, 30 S. W. 479; Gorham v. Settegast, 44 Tex. Civ. App. 254, 98 S. W. 665; Wolf v. Wilhelm (Civ. App.) 146 S. W. 216.

In support of the proposition that pedigree or the relationship of one person to another cannot be proven by general reputation, or by what neighbors or acquaintances thought or said upon the subject, we cite the following authorities of other states: Lamar v. Allen, 108 Ga. 158, 33 S. E. 958; Elder v. State, 123 Ala. 35, 26 South. 213; Watson v. Richardson, 110 Iowa, 673, 80 N. W. 413; In re Heaton's Estate, 135 Cal. 385, 67 Pac. 321; De Haven v. De Haven, 77 Ind. 236; Cyc. vol. 16, pp. 1229, 1230, 1232, 1233.

In Re Heaton's Estate, supra, the court said:

"It is the general repute, the common reputation in the family, and not the common reputation in the community, that is a material element of evidence going to establish pedigree. To hold otherwise would countenance a rule which could easily be turned to the accomplishment of great wrong and injustice."

The foregoing authorities make it plain that the limitation placed upon the admissibility of hearsay evidence to establish pedigree excludes testimony of what neighbors or acquaintances said upon the subject of the paternity or relationship of a person whose pedigree is in question, and hence affirm that relationship cannot be proved by general reputation in the community where such person lives or has lived. The testimony offered by appellants, the exclusion of which is made the basis of the assignment of error under consideration, was offered to prove by general reputation, in the community in which the appellee Mary J. Dickson lived, that she was the illegitimate daughter of Mary Ramsey, and not the daughter of Amelia Josephine Dickson, and, under the authorities, was inadmissible and properly excluded.

[3] In regard to the second proposition, we deem it sufficient to say that in our opinion the fact that the witness Mary Plew testified that the appellee Mary J. Dickson was her daughter, and that she gave her, when about four weeks old, to Mrs. Amelia Josephine Dickson, and the further fact that testimony was introduced by appellees tending to impeach Mrs. Plew's veracity, did not render admissible evidence that "it was the common repute and general understanding and general reputation in the town of Milford that Mary J. Dickson was the daughter of Mary Ramsey," for the purpose of supporting the credibility of said witness. We know of no rule or principle of law that would authorize the admission of such testimony for such a purpose.

[4] The third assignment of error is as follows:

"The court erred in sustaining the objection of defendants, and thereby excluding from the jury the testimony offered by plaintiffs through their witness W. R. McDaniel, who testified that he (said witness) was a member of the Dickson family, having married Miss Anna Dickson, a niece of W. T. M. Dickson, deceased, to the effect that he (the witness), as a member of said family, knew there was a tradition among the members thereof as to the maternity of the defendant Mary J. Dickson, and further knew that said tradition and family history was that said defendant was the daughter of one Mary Ramsey, and had been given to Josephine Dickson in her early infancy."

There was no material error in excluding this testimony. The record discloses that the witness McDaniel was permitted to testify and relate any statement or declaration he had heard made by any member or relative of the Dickson family relating to the parentage of Mary J. Dickson, and that said witness and others did testify fully in this respect. The witness McDaniel said:

"I have heard from the members of the Dickson family, before this suit was filed, who the mother of Mamie Dickson (meaning Mary J. Dickson) is. I heard that from my wife 24 years ago, and my wife was a daughter of John F. Dickson and his wife, Carrie Dickson, and was a niece of W. T. M. Dickson. Before I married her she lived there in the house with those three families. I stated that my wife, about 24 years ago, told me that Mamie Dickson, the defendant in this case, was a Ramsey. My wife said she got her information from her mother. My wife was a little older than Mamie Dickson. My wife told me she had heard this from the time she was old enough to know these things. My wife told me where the baby came from. My wife told me that the child, Mamie Dickson, was brought there by old lady Ramsey and carried to Josephine Dickson's room, and was brought there by the mother of Mrs. Plew, née Mary Ramsey. My wife stated that the actual mother of this baby was Mary Ramsey."

In view of the broad latitude allowed by the court and the very full statement made by this witness of the declarations he had heard emanating from members and relatives of the Dickson family in regard to the parentage of Mary J. Dickson, appellants could have suffered no injury by the exclusion of the testimony here offered.

The fourth and fifth assignments of error present the same question raised in appellants' second assignment, and has been disposed of adversely to their contention in what has already been said.

[5] The next contention, which is made in the brief under appellants' sixth assignment of error, is that:

"The court erred in overruling plaintiffs' motion for judgment on the verdict of the jury for the recovery of an equal one-half undivided interest in and to the real estate belonging to the estate of W. T. M. Dickson, deceased, because it was affirmatively established as a fact that Mary J. Dickson is the natural daughter and not the legitimate daughter of Josephine Dickson, deceased, and as such natural daughter she has no rights of inheritance in and to the property, or any part thereof, belonging to the estate of W. T. M. Dickson, deceased, and the plaintiffs, as the next of kin and lawful heirs of the said W. T. M. Dickson, deceased, are entitled to inherit and to recover in this suit an equal one-half undivided interest in and to the real estate owned and belonging to the estate of said W. T. M. Dickson, deceased; the defendant Mrs. Kate Dickson, as the surviving widow of said W. T. M. Dickson, being entitled by inheritance to recover in this suit the remaining one-half undivided interest in and to said real estate belonging to the estate of the said deceased."

As heretofore shown, the sole question propounded by the court to the jury was: "Is Mary J. Dickson the natural daughter of Amelia Josephine Dickson?" And appellants contend that as the expression "natural daughter" has a well-defined meaning in law, and means a daughter born out of wedlock, the court only submitted to the jury the issue of whether or not Mary J. Dickson was the illegitimate child or daughter of Amelia Josephine Dickson, deceased, and, the jury having found that she was, the judgment entered was improper, the same being in direct conflict with and repugnant to the verdict; that, if any judgment can be entered upon such a finding, then it must follow the verdict of the jury, and appellants must necessarily recover a portion of the land in controversy. Counsel for appellants, however, in a written argument filed in this court, express it as their opinion that the issue submitted by the court was not raised by the pleadings in the case, and therefore no judgment could be entered upon the jury's finding, but that the judgment must be reversed and the cause remanded for a new trial. That the term "natural child" has a technical meaning, and in law means an illegitimate child, a child born out of wedlock, as contradistinguished from one born in lawful wedlock, is unquestionably true, and it is likewise true that the judgment of the court must follow and conform to the verdict of the jury. The ingenious and able argument of learned counsel for appellants is predicated upon the assumption that the phrase "natural daughter," in the question propounded to the jury by the court, was used in its technical, legal sense (that is, meaning an illegitimate daughter), or that no other meaning can be attached to it, and must therefore be dealt with in that sense. We do think this assumption is justified in this case. In the revised edition of the Century Dictionary, vol. 6, the word "natural" is defined, and among other definitions given are the following: "Lawfully born; legitimate; opposed to adopted and to illegitimate." That the phrase "natural daughter" was used in the question propounded by the court in this case as meaning legitimate daughter, and that the jury so understood, there can be no doubt. The issue made by the pleadings and the evidence and tried by the jury was whether Mary J. Dickson was the daughter of Amelia Josephine Dickson or the daughter of Mary Plew. The question of whether or not Mary J. Dickson was the illegitimate daughter of Amelia Josephine Dickson was in no way and in no sense whatever in the case. In their pleadings the appellees asserted that Mary J. Dickson was the daughter of Amelia Josephine Dickson. This was denied by appellants, and the charge made that she was the daughter of Mary Plew, formerly Mary Ramsey. In the introduction of testimony and throughout the trial appellants sought to show that Amelia Josephine Dickson did not give birth to a child at the time she claimed to have given birth to Mary J. Dickson, but that she had been given, about that time, the infant child of Mary Ramsey, and that Mary J. Dickson was that child. This was the controlling issue in the case, made by both the pleadings and the evidence; and, while the word "natural" was not essential to a proper submission of it to the jury, its use did not, in our opinion, have the effect of presenting another and different issue. The word "natural" was used in the question propounded to the jury in the sense of lawfully born, legitimate, opposed to adopted or illegitimate, and not as a legal term in its technical meaning. That the jury understood that this was the sense in which the word was used, and that, in answering the question asked by the court, they determined the real issue in the case, cannot be doubted. It is well understood that even legal terms will not be given their technical meaning, if it appears that they are employed in an entirely different sense. In such case the meaning in which they are used will be adopted.

[6] While the court, in entering judgment, cannot disregard the verdict of the jury, whether the evidence may have been such that the court would have made a decision contrary to that made by the jury, or even though the evidence be insufficient to sustain the verdict, yet where a special verdict, in response to a question propounded by the court, is in a sense ambiguous or uncertain, the court may look to the record to interpret it. Hatchett v. Hatchett, 28 Tex. Civ. App. 33, 67 S. W. 164; Rushing v. Lanier, 51 Tex. Civ. App. 278, 111 S. W. 1089. The qualifying word "natural," used by the court in submitting the issue in this case, has different meanings. It means legitimate, as opposed to illegitimate, according to lexicographers, and so the special verdict in this case may be considered uncertain. This being

true, it may be considered with reference to the pleadings and evidence in the case in interpreting it. So considered, all doubt which might otherwise exist as to whether the real issue in the case was submitted and determined by the jury is removed. At any rate, we think, in view of the theory upon which the case was tried, and the record made and sent to this court, it would be highly technical to hold that the issue raised by the pleadings and evidence was not submitted to the jury, but upon another and different issue, and that therefore the case should be reversed and remanded for a new trial. Indeed, we are clearly of the opinion that we would not be warranted in so holding.

[7] The admission, on the hearing of appellants' motion for a new trial in the court below, of the statement of jurors to the effect that they construed the phrase "natural daughter," as used in the question submitted to them, to mean legitimate child (that is, a child born of the body and in lawful wedlock), furnishes no good reason for a reversal of the case. We regard that testimony unimportant in determining the question raised on the motion for a new trial and its admission harmless, if inadmissible.

Believing that no legal ground for a reversal of the district court's judgment is shown, it is affirmed.