### JUNG v. HARRIS et al. (No. 7483.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 20, 1926. Rehearing Denied Feb. 17, 1926.)

**1. Bastards** ⬤⟳8—**In adopted daughter's action to try title to foster parents' homestead after death of parents, whether she was natural child of foster mother born out of wedlock held for jury.**

In action by adopted daughter to try title to foster parents' homestead, which had been taken by mother's sisters, claiming to be sole heirs, after death of parents, and which plaintiff claimed by inheritance as the natural child of the foster mother, born out of wedlock, question of whether plaintiff was natural child of mother, who survived the father and who did not join with him in instrument of adoption, *held* for jury.

**2. Appeal and error** ⬤⟳1003.

Appellate court has no authority to disturb finding of jury on contested issue.

**3. New trial** ⬤⟳102(1).

New trial will not be granted for newly discovered evidence, where diligence was not exercised to procure testimony on trial.

**4. Evidence ☞317(1).**

Evidence of conversations with living persons *held* objectionable as hearsay, even as evidence of pedigree or age.

**5. Subrogation ☞26—Purchaser of land of estate of deceased, who was mere volunteer, held not subrogated to rights of creditors, whose claims were paid with purchase money.**

Where purchaser of real estate from estate of deceased paid money voluntarily, without reservation or condition, he was mere volunteer, and was not subrogated to rights of creditors holding liens, whose claims were paid out of purchase money.

Appeal from District Court, Guadalupe County; Lester Holt, Judge.

Suit by Ophelia Harris and another against William Jung, in which others were impleaded. From a judgment for the plaintiffs, defendant appeals. Modified and affirmed.

Alvin P. Mueller and F. E. Knetsch, both of Seguin, for appellant.

O. B. Black, of San Antonio, and R. A. Weinert and A. J. Wirtz, both of Seguin, for appellees.

SMITH, J. Naomi Crockston, called Mamie Bruns in the record here, was born in the year 1875, and lived in the city of Victoria, Tex., with her mother and three sisters, until she was about 18 years old, when she went alone to San Antonio, where she resided during the ensuing four or five years. During the period of her residence in San Antonio she either gave birth to, or assumed the care and custody of, a girl child, named Ophelia, now Ophelia Harris, appellee herein. Two or three years after the advent of Ophelia into this relationship, on June 21, 1901, Naomi Crockston married Albert Bruns, a member of a Seguin family. A few months later, on November 4, 1901, Bruns legally adopted the girl Ophelia. In the instrument of adoption, which was placed of record in Ellis county, on April 19, 1902, it was recited that Ophelia was the child of Patrick Rose and Frankie Rose. The family, including Ophelia, moved to Guadalupe county, and continued to reside there until the death of Albert Bruns, which occurred in October, 1909. The death of his wife, Mamie Crockston Bruns, followed four months later. Ophelia, then 10 or 12 years old, who all the while had been known as Ophelia Bruns, went to live with a sister of Mamie Bruns, but after a few months was placed in a convent in Victoria, where she was educated. After leaving the convent she took the course of a trained nurse, and subsequently married B. V. Harris, who was joined, pro forma, as a party to this suit.

After his marriage, Albert Bruns purchased a home in Seguin, which he still owned at the time of his death. He left a will in which he devised his estate to his wife, Mamie, but this will was never probated as such; Mamie Bruns died intestate. After the death of Mamie Bruns, her sisters, assuming to be her sole surviving heirs, sold and conveyed the Bruns homestead to Martin Oreschanigg, who in turn sold and conveyed it to William Jung, appellant herein. Between them, Oreschanigg and Jung had the possession and use of the property for more than 15 years.

In September, 1923, Ophelia Bruns Harris instituted this suit against Jung, in the form of an action in trespass to try title, to recover title and possession of the Bruns homestead, resting her demand upon the claim that she was the natural child of Mamie Crockston Bruns, and that as such she inherited her mother's estate. In his answer Jung impleaded the sisters of Mamie Bruns upon the warranty of title embraced in their conveyance of the Bruns homestead. Ophelia Harris recovered against Jung, who in turn recovered against the impleaded parties. Jung alone has appealed.

[1] The case turns primarily upon the identity of appellee, Ophelia Bruns Harris, and is dependent upon her true relationship to Mamie Crockston Bruns. Appellee contends that she was the natural child of Mamie Crockston Bruns, in which event she is entitled to recover; while appellant contends that appellee was not the natural child of Mrs. Bruns, but that the latter became attracted and attached to her as the helpless infant of an invalid mother, upon whose death Mrs. Bruns in charity assumed the care and custody of the child, whom she took to raise as she would her own daughter. The jury found that appellee was the daughter of Mamie Bruns, and appellant, in his first assignment of error, vigorously attacks that finding.

Both of the alleged parents or foster parents of appellee are dead, and that source of proof is cut off, of course. It is remarkable that no witness was produced upon the trial who professed any personal knowledge or intimate hearsay knowledge of appellee's true parentage, or of the time or place of her birth, or of any of the circumstances or conditions which tend to throw any light upon that event. During the period of Mamie Bruns' residence in San Antonio, in which period Ophelia was born, her mother and three sisters near her own age resided in Victoria, about 100 miles distant. There is nothing to show that the relations between all of them were not of the most affectionate nature; and it may be said to be conclusively shown that Ophelia's mother and sisters frequently visited her in San Antonio, and she often visited them in Victoria, during

the period in which the child is alleged to have been born. Her mother died in 1900, but the sisters are still living, and two of them, and the son of one of them, testified upon the trial. And, while they testified generally that Mamie had no child of her own, and that she claimed that Ophelia was not her own child, but was the child of another, whom she had taken to raise because she loved children and had none of her own, yet none of these witnesses, close blood relatives, and apparently having full opportunity to know the facts, undertook to give any reasons for their simple statement that Mamie had no child of her own and had adopted Ophelia. Nor did any of them undertake to testify to any facts concerning the habits, occupation, environment, or mode of life pursued by Mamie during the period of her residence alone in San Antonio, in which period Ophelia was born. On the other hand, the brothers of Albert Bruns testified upon the trial, but were equally silent as to the place of residence or other vital facts concerning Albert during the period in question. So far as their evidence shows, Albert's life was an utter blank during that vital period.

It is inconceivable that the brothers of Albert Bruns and the sisters of Mamie Bruns, under the normal influence of close blood relationship, and circumstanced as the record shows they were during the period in question, could be so callous or blind to momentous events occurring in their respective family circles as to acquire no knowledge concerning so vital a happening as the advent of an illegitimate child into that circle. Is it possible that her sisters knew so little of the life, character, habits, occupation, environment, and mode of living of their 22 year old unmarried sister, who resided within 100 miles of them, and corresponded with them, and whom they visited several times each year, that they could not testify to any fact or circumstance or condition tending to show whether or not she gave birth to a child within that period? And is it possible that his brothers, with like opportunities, could testify to no fact or circumstance throwing any light upon Albert Bruns' true relationship to a 3 year old child brought to him by the woman he married? And yet such is the case made here. Appellee contends that these circumstances strongly support the claim of Ophelia Harris that she was in fact the natural child of Mamie Bruns; that, because she was born to Mamie Bruns three years before the latter's marriage, and therefore out of wedlock, the relatives of Albert and Mamie Bruns are loath to disclose the true facts, but prefer to leave them cloaked under the mantle of charitable silence. This contention is not without reason to support it.

Appellee herself testified that she was the natural daughter of Mamie Bruns, but this direct assertion of the witness was admittedly based upon her further assertion that Mamie Bruns told her that she was the latter's natural daughter. Charlie Bruns, a brother of Albert, testified that Albert told him that appellee was the daughter of the "girl he married," Mamie Bruns. This testimony of these two witnesses comprises the only evidence of affirmative statements of the alleged parents that Ophelia was the natural child of Mamie Bruns. This testimony seems to be supported with peculiar force by the fact that, shortly after the marriage at San Antonio, the husband alone executed and acknowledged and had recorded an instrument whereby he sought to legally adopt Ophelia. Although this instrument was executed and acknowledged by Bruns in Bexar county, on November 4, 1901, it was not filed for record until April 19, 1902, and, instead of filing it in Bexar county, where it was executed and acknowledged, it was filed and recorded in Ellis county. It is not unreasonable to surmise that by this act Bruns sought to give regularity to the status of his wife's child, admittedly born out of wedlock; and the further fact that he was not joined by his wife in the act of adoption of a child she had voluntarily taken to her bosom affords strong evidence that this child was her own product. When only 22 or 23 years old she had assumed the care of the infant, explaining to her relatives, who resided in another county, that she was assuming this burden because she was fond of children, and had none of her own, and the mother of this one had died. Assuming that she herself had given birth to the child, it was an illegitimate product, and, being determined to keep it with her and rear it, the explanation she gave her relatives was as plausible as any other than the true one, which quite naturally she would want to conceal from mother, sisters, and friends. She did keep the child, treating it as her own, as long as she lived. Upon her deathbed she tried to arrange for the payment of the debts against the homestead, telling appellee in those solemn moments that the property would belong to appellee. Throughout her life she endeavored to maintain the subterfuge, if it was a subterfuge, as to the child's origin, by telling her relatives that she was the foster mother of Ophelia, but this fact does not conclusively control against her obvious admissions to her husband, and her attitude of consistent fidelity to the child. Ophelia herself testified that she had no doubt about her parentage, and had never heard of such doubt until her mother died, when some of her relatives told her that Mamie Bruns was only her foster mother. This doubt was pressed upon her by her relatives, particularly when the question of her property rights arose, and in 1922 she appears to have stated in a peculiarly composed letter to one of Albert Bruns' brothers, concerning the property dispute, that Albert and Mamie

281 S.W.—22

Bruns were her foster father and mother, but this statement seems to have been made under the stress of assurances from her relatives of her uncertain origin, rather than as a result of voluntary expression.

[2] The question of the true identity of Ophelia Bruns was one for the jury. The issue was clearly raised by the evidence, the jury resolved it in favor of appellee, and we have no authority or disposition to disturb their finding. We overrule appellant's first proposition, as well as the third, in which the sufficiency of the evidence as to appellee's age is challenged. The jury's finding on that issue, as bearing on the question of limitations was fully warranted by the evidence.

[3, 4] Appellant sought to obtain a new trial upon the ground of newly discovered evidence, based upon the affidavits of George W. Saunders and Fritz Woehler. The effect of Saunders' affidavit is that he once knew a man named Patrick Rose, who was a cattleman and a resident at different times of Karnes City, Del Rio, and San Antonio. Appellant's theory is that this Patrick Rose may have been the same person recited in Albert Bruns' declaration of adoption as the father of Ophelia Bruns. There is nothing in the affidavit of Saunders to support this theory, however, and his evidence would have been without value upon another trial. The material statement in Woehler's affidavit set up conversations he had had with certain individuals who are still living, which latter fact would have rendered his testimony objectionable as being hearsay, even as evidence of pedigree or age. Nunn v. Mayes, 30 S. W. 479, 9 Tex. Civ. App. 366. Besides, it is not shown that appellant exercised the slightest diligence to procure this testimony upon the trial of this cause, and, in the absence of such diligence, the court properly overruled the motion for new trial. Appellant's second proposition is overruled.

[5] Albert Bruns purchased the property here involved in 1909; the consideration therefor being $750, of which $400 was paid in cash, and the balance, $350, in a vendor's lien note. The vendor subsequently transferred this note to W. C. Bruns, Albert's brother. In June, 1910, after the death of Albert and Mamie Bruns, the lot was conveyed by Mamie Bruns' collateral heirs to Martin Oreschanigg, for a cash consideration of $750, which was paid directly to W. C. Bruns, the holder of the vendor's lien note against the property, and who seems to have assumed the burden of settling up the affairs of Albert Bruns' estate. Bruns applied this purchase money, first, to the payment of the note, then amounting, with interest, to nearly $400, and, second, to the payment of "around $100 for incidentals, principally undertaker and hospital bills," and, third, to the payment of the balance, $250, towards extinguishing a note for $450, which his mother held against Albert Bruns. In other words, the money paid by Oreschanigg in the purchase of the land was appropriated to the payment of the debts of the estate of Albert Bruns. Some of these debts constituted a charge against the property here in dispute, and the application of the purchase money to the satisfaction of those charges operated to release the liens existing against the property by reason of the debts thus extinguished. Appellant contends that, because the money he paid for the property was thus used by the person to whom he paid it to extinguish the debts against the estate and liens against the property, he was thereby subrogated to the rights of the creditors holding such liens. There is no evidence in the record that Oreschanigg, the purchaser of the property, was ignorant of the status of the property or the title thereto, when he purchased it. There is no evidence that he requested that the purchase money be applied in his behalf to the satisfaction of those obligations or discharge of those liens, or that he acted upon the invitation of the debtors, or at the request of the principal obligor. So far as the record shows, he paid over the money voluntarily, without any reservation, or condition, or request, or other understanding or agreement, either express or implied, was not concerned in the application of those funds, and knew nothing of such application. Under such facts he was a mere volunteer, and obtained no right of subrogation. Bell v. Franklin (Tex. Civ. App.) 230 S. W. 181, and authorities there cited. Appellant's fourth proposition is overruled.

The judgment is affirmed.

## Order Modifying and Affirming Judgment.

In the original disposition of the case the judgment of the court below was ordered affirmed. Our attention has been called to an agreement among the parties that the judgment be modified, and, in pursuance of that agreement, it is ordered that the judgment of the court be modified so that defendant William Jung shall have and recover of and from the defendants Elizabeth O. De Lomel, Mrs. Parthenia Knowlan, and Frank Knowlan, the sum of $500, with interest thereon from May 1, 1925, at the rate of 6 per cent. per annum, and the said William Jung shall have and recover of and from the defendants Martin Oreschanigg, Mrs. Parthenia Knowlan, and Frank Knowlan the sum of $500, with interest thereon from May 1, 1925, at the rate of 6 per cent. per annum; also that said William Jung shall have and recover of and from said defendants in the proportion of one-half chargeable to each set of said defendants, all costs incurred in the district court herein.

As so modified, the judgment will be affirmed.