**IVEY et al. v. NEYLAND et al. (No. 3590.)**

Court of Civil Appeals of Texas. Texarkana. Nov. 15, 1928.

Rehearing Denied Nov. 29, 1928.

the record) of the absence of a witness, and sickness preventing one of appellants' counsel from being present. Neither the name of the absent witness, what appellants expected to prove by him, the diligence, if any, used to procure his testimony, nor that appellants expected to procure by the next term of court, was stated in the motion; and one of appellants' chosen counsel was present and represented them at the trial. Hence it is plain, we think, that appellants' contention here that the court below erred when he refused to sustain the motion should be overruled. Article 2168, R. S. 1925; Short v. Walters (Tex. Civ. App.) 231 S. W. 161; T. M. Ry. Co. v. King (Tex. Civ. App.) 132 S. W. 966; Springfield Fire & Marine Ins. Co. v. Whisenant (Tex. Civ. App.) 245 S. W. 963.

Appellant Mrs. Ivey, testifying as a witness in her own behalf, having said on cross-examination by appellees that, after she transferred the stock, she found out that Mayo W. Neyland, Jr.'s, statement that her deceased husband's brothers were claiming she had no interest in same and would object to her inheriting an interest therein was true, her counsel on her redirect examination asked her, "What did you find out about this contention?" and she replied she found out "that the boys (quoting) were objecting, they said I was not entitled to the stock, Mr. R. R. Neyland was telling them that I was not entitled to it, that they were the legal heirs." Appellees objected to the answer, on the ground that it was hearsay, and moved the court to exclude same as evidence. If the witness meant by her answer to say that "the boys" told her R. R. Neyland told them they were the legal heirs, and that she was not entitled to an interest in the stock (and that seems to be what the parties and the court understood her to mean), the testimony was plainly subject to the objection urged to it. 22 C. J. 199 et seq.; Jung v. Harris (Tex. Civ. App.) 281 S. W. 335. We are not prepared to say she did not mean that, and therefore overrule appellants' second assignment of error.

On the theory that the findings made by the court, set out in the statement above, did not cover all the issues made by the pleadings and the evidence, appellants, on the seventeenth day after the court adjourned for the term, asked the judge to make "additional findings of fact and conclusions of law." The judge complied with the request, and, having reduced such additional findings to writing, filed same with the clerk on the twenty-first day after the court adjourned as stated. By the terms of the statute the judge had only ten days from the time the court adjourned for the term in which to file findings of fact and conclusions of law. Article 2247, R. S. 1925. The effect of the statute as construed by the courts of this state is to deny them a right to consider such findings and conclusions when filed after the time specified. De Bruin

Holland & Moore, of Dallas, for appellants.
Crosby & Estes, of Greenville, for appellees.

WILLSON, C. J. (after stating the facts as above). When the cause was called for trial, appellants moved to continue same because (it appears from a bill of exceptions in

v. Santo Domingo Land & Irrigation Co. (Tex. Civ. App.) 194 S. W. 654; State .v. Pease (Tex. Civ. App.) 147 S. W. 649; Carter v. Jenkins (Tex. Civ. App.) 282 S. W. 669. Therefore the assignments of error numbered 5, 6, 7, 8, and 16 in appellants' brief, which are respectively based on said additional findings, have not been considered.

It is not contended that on the case made by the facts thereof as found by the trial court the judgment rendered was unauthorized, but it is contended that the evidence did not warrant findings the court made as to facts material to his right to render the judgment. The findings specifically attached as unwarranted are: (1) That Mayo W. Neyland, Jr., informed appellee Mrs. Ivey as to the amount of the bank stock bequeathed by the decedent, Pitts. (2) That, while he informed her she could not take an interest in the stock under the laws of Alabama, he also informed her his father thought the laws of Texas applied, and that under them she could take such an interest. (3) That said Mayo W. Neyland, Jr., made no statement to Mrs. Ivey as to the then value of the stock at the time he offered to buy it, and that what he said as to its value was with reference to the time Mrs. Mary Grace Benson might die was his opinion merely, and was understood by Mrs. Ivey to be only his opinion. We think all the findings specified, except the one first mentioned, have sufficient support in the testimony in the record of Mrs. Ivey as a witness in her own behalf and in the testimony of said Mayo W. Neyland, Jr., and Pearl Collins, as witnesses, and that the finding first mentioned was warranted by recitals in the writing whereby Mrs. Ivey transferred her interest in the stock to appellee R. R. Neyland.

Appellants' theory of the case seems to be that it appeared the amount of dividends from the bank stock Mary Grace Benson could take under the terms of the will was limited to $1,848, that, if the dividends ever amounted to more than that sum, Mrs. Ivey's deceased husband and his three brothers mentioned in the will would take the excess, and that, in determining her contention, that it appeared the amount paid her for her interest in the stock was so inadequate as to evidence fraud, the value of the stock at the time she transferred her interest in it, and not what might be its value at the time of Mary Grace Benson's death, should be looked to. We regard the theory as an erroneous one. The intention of the testator, Pitts, evidently was that Mary Grace Benson alone should take of the dividends arising from the stock during her life, and that she should take same without reference to whether they amounted to $1,848 or more or less than that sum. And we think the trial court correctly concluded that, in determining the value of Mrs. Ivey's interest in the stock as compared to the amount appellee R. R. Neyland paid her for it, the time when Mary Grace Benson might die, and not the time when Mrs. Ivey transferred it, should be looked to; for Mrs. Ivey's husband and his brothers mentioned in the will took the stock charged with the life estate bequeathed to Mary Grace Benson. Said Mary Grace Benson was alive at the time of the trial, and there was evidence that her life expectancy was eleven years. We think the trial court correctly concluded, further, that it could not be said that Mrs. Ivey's interest in the stock would be worth more at the time Mary Grace Benson might die than the amount appellee R. R. Neyland paid her for it. In that view, if it should be conceded it appeared said appellee R. R. Neyland occupied a fiduciary relationship toward Mrs. Ivey, as appellants contend he did, it would add nothing to the strength of appellants' case, for it would not appear that said R. R. Neyland failed to discharge any duty he owed Mrs. Ivey on account of such relationship.

Contentions not disposed of by what has been said are overruled, and the judgment is affirmed.