GULF, C. & S. F. RY. CO. v. BAKER et al. (No. 6117.)

(Court of Civil Appeals of Texas. Austin. Dec. 17, 1919. Rehearing Denied Jan. 28, 1920.)

1. LIMITATION OF ACTIONS ☜121(2)—AMENDED PETITION ALLEGING SALE OF JOINT PLAINTIFF'S INTEREST TO OTHER PLAINTIFF DOES NOT SET UP NEW CAUSE OF ACTION.

In action by two joint lessees, amended petition naming only one of the lessees as plaintiff, and alleging that such plaintiff had purchased the interest of the other lessee in the lease, was not barred by limitations, though filed after period of limitations had expired; the amended petition not stating a new cause of action.

2. LIMITATION OF ACTIONS ☜127(8)—AMENDED PETITION IN ACTION AGAINST RAILROAD FOR LEAVING OPENINGS IN PLAINTIFF'S FENCES HELD NOT TO STATE NEW CAUSE OF ACTION.

In action against railroad for loss of cattle and damage to pasturage because of openings made in plaintiff's fences during construction of road, where original petition charged that defendant, its agents, and employés broke fences in not less than eight different places, and that "people grading the road for defendant" tore down fences and left them down, without specifying parts of fences where openings were made, amended petition, alleging openings to have been made by servants of independent contractor on the right of way, held not to state new cause of action so as to be barred by limitations; the amended petition merely making more specific the allegations of original petition.

3. TRIAL ☜357—ANSWER TO SPECIAL ISSUE CONSTRUED AS SUFFICIENTLY RESPONSIVE.

In action against railroad for loss of cattle through openings left in plaintiff's fence, where special issue submitted question of whether the 17 head of cattle alleged in plaintiff's petition escaped through opening, with the requirement that jury answer yes or no, answer of "Yes; at least 10 head," held sufficiently responsive.

---

☜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. TRIAL ⬤⟶355(2)—ANSWER TO SPECIAL IS-
SUE SUFFICIENT FOR BASIS OF JUDGMENT.**

In action against railroad for loss of cattle through openings in fence on railroad's right of way, where jury, in answer to special issue as to whether 17 head of cattle had escaped through openings complained of, had answered "Yes; at least 10 head," answer of jury in response to issue as to reasonable value of "said cattle," if former question was answered in the affirmative, of certain amount, without specifying as to whether such amount was for 10 or 17 head of cattle, was sufficient on which to base judgment, in view of the pleadings, evidence, and instructions of the court, warranting verdict for such amount for loss of 10 head.

**5. NEGLIGENCE ⬤⟶136(5)—CAUSE OF DAMAGE
QUESTION FOR JURY.**

In action of tort where it is not shown with absolute certainty that any of the damage sustained was caused by defendant's wrongful acts, but where it is shown with reasonable certainty that some of the damage was sustained by reason thereof, plaintiff is entitled to have jury pass on the evidence, consider all the facts and circumstances of the case, and make the most intelligent and proper estimate which the nature of the case will permit as to damages resulting from defendant's act.

**6. RAILROADS ⬤⟶114(2)—EVIDENCE WARRANT-
ING ALLOWANCE OF DAMAGES FOR CATTLE
LOST AFTER ESCAPING THROUGH OPENINGS
IN FENCE DURING RAILROAD CONSTRUCTION.**

In an action against a railroad for loss of cattle escaping through openings made in plaintiff's fence during railroad construction, evidence as to extent of damages *held* sufficient to warrant verdict as to amount.

Appeal from District Court, McCulloch County; J. O. Woodward, Judge.

Action by J. T. Baker and L. M. Baker against the Gulf, Colorado & Santa Fé Railway Company. Judgment for last named plaintiff, and defendant appeals. Affirmed.

Terry, Cavin & Mills, of Galveston, Sam McCollum, of Brady, and Lee, Lomax & Smith, of Ft. Worth, for appellant.

F. M. Newman, of Brady, and Wilkinson & McGaugh, of Brownwood, for appellee.

### Findings of Fact.

BRADY, J. The appellee, L. M. Baker, who was plaintiff below, and one J. T. Baker were the lessees of about 4,200 acres of land, situated partly in McCulloch and partly in Concho counties, Tex. The lease began April 15, 1910, and ended April 15, 1911, and the land was leased for grazing and pasturage purposes. After acquiring the lease the plaintiff placed in the pastures 393 head of cattle. During the fall of 1910 appellant, in the construction of the roadbed for its line of railway between Brady and Eden in Texas, employed a construction company to prepare and complete its roadbed, in preparation for laying rails, and to do all necessary grubbing, clearing, and grading, which included the lands leased by plaintiff, and described in his petition. In doing this work it was necessary for the construction company to cut the fences of plaintiff's pastures as the work progressed to those premises. The construction company began work in the fall of 1910, in the latter part of October or early in November, and in the course of the work, and before its acceptance by appellant, the undisputed facts show that the construction gang broke the fences of plaintiff's pastures at several different places along the right of way, rendered necessary in the performance of such work.

At the time plaintiff placed his cattle in the leased pastures there was no other stock there. The grass was good, and there was a substantial wire fence around the pastures. The cattle remained in the pastures during the summer and fall of 1910, but 90 head were sold by plaintiff about the latter part of August, and they were delivered early in November. There were three pastures, called the east pasture, the horse pasture, and the northwest pasture. There were five breaks made in plaintiff's fences by the construction gang on the right of way, and at least another break in the east pasture south and off the right of way, and plaintiff had placed a gate in the east pasture fence.

Up to the time these breaks were made none of plaintiff's cattle had been escaping from the pasture, and no other stock had been getting in. At different times while the railroad was building through the pasture plaintiff missed cattle. At the time he made delivery of the 90 head referred to above he found them at various places; some of them in lanes, some in an adjoining pasture, and some around the town site of Melvin, which was near by, and others near Eden and Brady, something like 10 miles west of his pasture. During this time plaintiff found other cattle in his pasture belonging to different owners nearly every day from the time the construction work began up to January; and after the breaks were made in the fences plaintiff rode his fences every day, and frequently built up the gaps to keep cattle out of his pasture and to keep his own from escaping. He often saw cattle tracks at the gaps in question. During this time the construction gang were at work, sometimes around the gaps and sometimes not. Plaintiff notified the foreman of the construction gang of the gaps being open, and complained of the failure to close them, but the gaps continued to be left open.

Among the cattle escaping, plaintiff failed to find 17 head, 11 of which were coming two year old steers, and the remainder coming three year old steers. Plaintiff employed his

---

⬤⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

own time, and hired extra help to hunt these cattle, and paid them a reasonable sum for their services. The reasonable market value of the two year old steers was from $20 to $30, and for the three year old $34 each.

The pasture was capable of sustaining 500 head of cattle until spring in a good condition, and the cattle were in good shape when the railroad company began to construct the roadbed and right of way through the pasture. Late in 1910, after plaintiff had removed the 90 head from the pasture, he moved some 160 or 170 head to other pastures for grass, because the grass in the leased pasture had been eaten out pretty well and was not sufficient to sustain the cattle, which had already started to fall away in flesh. He later removed other cattle for the same reasons, leaving about 100 head in the pasture. The 100 head left in the pasture came through the winter in hard shape, but plaintiff lost none of them. The difference in value of these cattle, due to the shortage in grass through other cattle having grazed on the pasture, was from $3 to $5 a head, and the grass was worth from 25 to 35 cents an acre.

The evidence did not disclose just when or where the 17 head escaped, nor through which of the gaps they went. They might have gone through one of them or all of them. There was positive evidence, however, that some cattle got in and out of the pasture through openings made by the construction company during the fall of 1910, and some of them were plaintiff's cattle. There was a lane opening into the Brady and Eden public road, which road was on the north side of the pasture, and there was a gate in the lane which was sometimes left open. There was testimony that there were places in the fence close to the northwest corner of the pasture that were not in good condition, and the fence was down in one place there some 20 or 30 steps wide. The railroad was between a quarter and half mile from that fence, and the track was about a mile from the west corner of the northwest pasture. The mail carrier, who traveled this road going to Eden, reported to plaintiff that he saw 7 head of cattle on the Brady and Eden road about a mile and a half north of the north gate on such road. They were young steers and had plaintiff's brand on them.

The plaintiff filed his original petition June 29, 1912, joined by J. T. Baker as plaintiff. In this petition he alleged, among other things, that before the delivery of the 90 head of cattle in the fall of 1910 appellant commenced grading its road, and that "the employés and people grading said road for defendant tore down the fences around said pastures and left them down, and permitted plaintiff's said cattle to escape from said pastures and scatter in every direction"; that

the remainder of the cattle escaped through the openings in the fences "so made and left open by defendant"; that he frequently put up the fences during that time, but that they were often torn down by the parties grading the road for defendant, and that plaintiff's cattle escaped through these openings, and other stock entered the pasture and destroyed the grass; that plaintiff frequently complained to the parties grading the road for defendant not to take down the fences, and to keep them up and not to permit stock to go in and out; that by the acts of defendant, its employés, and agents plaintiff was damaged in the loss of the cattle not recovered, and in other particulars substantially as alleged later in the amended petition. Plaintiff averred that defendant tore down the fences around the pastures in as many as eight places, and left them down.

On February 24, 1915, there was filed the third amended original petition; L. M. Baker alone being plaintiff. In this petition the contract between appellant and the construction company was specifically alleged, and it was claimed that the fences were torn down by the construction company, acting under its contract with appellant, at several points where the right of way entered into and emerged from said pasture, and specifically alleged that the fences were so torn down in as many as five different places where the line of railway entered the pastures or issued therefrom. The other averments are substantially as contained in the former pleadings, and it is not necessary to make any further statement of the amended pleading, except to say that plaintiff charged his damages to have accrued from the negligence of the defendant and the construction company.

The case was submitted to the jury upon special issues; the questions and answers being as follows:

"Question No. 1. Did the contractors, as alleged in plaintiff's petition, tear down the fences of the plaintiff at the places where the said roadbed of the defendant went through plaintiff's fences? Answer this question 'Yes' or 'No.'

"Answer: Yes.

"Question No. 2. Did the 17 head of cattle alleged in plaintiff's petition escape through these openings or gaps on the right of way of the defendant's road? Answer this question 'Yes' or 'No.'

"Answer: Yes; at least 10 head.

"Question No. 3. Did the plaintiff ever recover or receive the 17 head of cattle so alleged by him in his petition to have been permanently lost? Answer this question 'Yes' or 'No.'

"Answer: No.

"Question No. 4. If you answer question No. 2 in the affirmative, then you will answer the following question, but, if you answer question No. 2 in the negative, you need not answer the same. State what was the reasonable fair

market value of said cattle at the time and place, if you find they did so escape through said openings or gaps?

"Answer: $300.

"Question No. 5. Did any cattle or other live stock enter into plaintiff's said pastures through the openings made in the fences on defendant's right of way by the persons engaged in constructing its roadbed and during the time of its construction? Answer this question 'Yes' or 'No.'

"Answer: Yes.

"Question No. 6. If you answer question No. 5 in the affirmative, then state whether or not any grass in said pasture was consumed or destroyed by said stock so entering said pastures? Answer this question 'Yes' or 'No.'

"Answer: Yes.

"Question No. 7. If you answer question No. 6 in the negative, you need not answer the following question, but if you answer it in the affirmative, you will answer same. If you find that any grass in plaintiff's pasture was consumed or destroyed by live stock by reason of the openings in his fences made by persons constructing said roadbed, then you will find the market value of such grass so consumed and destroyed at the time and place it was consumed and destroyed, if any.

"Answer: $210.

"Question No. 8. Did the plaintiff make a reasonable effort to find and gather the cattle, that is the 17 head of cattle that he alleged was lost from said pastures, if you find that any escaped through the openings upon said right of way? Answer this question 'Yes' or 'No.'

"Answer: Yes.

"Question No. 9. Did plaintiff incur and pay any expenses in a reasonable effort to find said cattle that escaped, including those that were permanently lost, if you find that any escaped and were lost as alleged in plaintiff's petition. Answer this question 'Yes' or 'No.'

"Answer: Yes.

"Question No. 10. If you answer question No. 9 in the negative, you will not answer the following question, but if you answer it in the affirmative, then you will find what amount was reasonable and necessary in the way of expenses incurred in looking after and gathering said cattle.

"Answer: $100."

In addition to the questions propounded to the jury, the court gave this precautionary instruction:

"You are instructed that, if you believe from the evidence that the cattle of the plaintiff escaped through other openings in said pastures and not through the openings made by the construction company on defendant's right of way, you will not be authorized to return damages for the escape of said cattle, if any, through said openings, if any; or if other cattle other than plaintiff's cattle got into plaintiff's pastures through other openings other than those on the right of way, if any, and damaged plaintiff's grass, you will not be authorized to return a verdict for damages in any sum whatever against the defendant for the destruction of plaintiff's grass."

Upon the verdict the court entered judgment for plaintiff for the damages found by the jury, with legal interest, aggregating $881.45.

### Opinion.

[1] Among the questions presented upon this appeal is the point that this suit was originally instituted by J. T. and L. M. Baker, and that by amended petition L. M. Baker alone prosecuted the suit, alleging that before the damages had accrued he had purchased from J. T. Baker all his interest in the lease contract and all rights thereunder, and also all of J. T. Baker's right, title, and interest in the cattle. The precise point is that the amended pleading set up a new cause of action, which was barred by the two-year statute of limitation, because of the change made therein, seeking recovery in the name of J. T. Baker alone, whereas recovery had theretofore been sought in the name of the joint plaintiffs, J. T. and L. M. Baker. The identical question was ruled upon by this court adversely to this contention in the former appeal of this case, reported in 184 S. W. 257. We have again considered the matter, and have concluded to adhere to the former holding of this court, and refer to the reasons given and authorities reviewed in the opinion on the former appeal. Therefore the assignment raising this question is overruled.

It is also claimed that the third amended original petition set up a new cause of action, which was barred by the two-year statute of limitation, for that in the original petition the plaintiff sought recovery for the acts of defendant's agents and employés in breaking and leaving open the fences at points around plaintiff's inclosure, but such points not being definitely described or identified as being on the right of way, as to which a statutory duty was imposed on defendant, whereas the amended petition set up that the fences were broken by the servants of an independent contractor at points on the right of way only, and sought to hold appellant liable on that account for the violation of a statutory duty.

[2] After a careful consideration of the question, we are of the opinion that the contention is without merit. The original petition charged the breaking of the fences at several different places, the allegation being in not less than eight places, but failed to state the points where made. This averment was broad enough to include breaks on the right of way and also openings at other places, but certainly embraced the former. The amended pleading made a more specific or definite statement, and confined the allegations of breaking to the right of way. We think there was clearly in the amended petition a retention of the cause of action alleged in the original petition, at least as

to the five gaps alleged in the amendment which were confined to the right of way. Furthermore, even if it be conceded that the railway company would not be liable for the acts of the servants and employés of the construction company in breaking and leaving openings in appellee's fences off the right of way because they were servants of an independent contractor, the situation would not be different, because the original pleadings alleged not only that the eight openings in the fences complained of were made by defendant, its agents, and employés, but also specifically alleged the grading of the road through the pastures in question, and that "the people grading the road for defendant" tore down the fences and left them down. It was also averred that appellee frequently complained to the "parties grading the road for defendant" not to take down the fences, and to keep them up, and not permit the stock to go in and out. The amended pleading merely made these allegations more specific, and gave the name of the contracting or construction company. As to the five breaks in the fences relied upon by amendment, they were undoubtedly included in the broad averments of the original petition, and under the pleadings the railroad company, as to these breaks, could have made exactly the same defenses. In none of the rules laid down in Phœnix Lumber Co. v. Houston Water Co., 94 Tex. 456, 61 S. W. 707, for determining the identity of causes of action, is there any ground for holding the two pleadings in question to have stated different causes of action, when fairly construed, so as to bar by limitation the action asserted in the last. Without further discussion of the matter, we overrule the contention.

[3] By another assignment of error it is urged that the jury's answer to question No. 2 was not responsive to the question; that they were required to answer the question "Yes" or "No", which they were manifestly unable to do, and did not do; and that therefore the case should be reversed, or the appellee required to enter a remittitur for the damages awarded for the 10 head of cattle found by the jury to have escaped, under their answer to question No. 2.

It is true that the court, in this question, did submit the issue whether the 17 head of cattle alleged in plaintiff's petition escaped through the openings on the right of way, and that the jury were instructed to answer this question "Yes" or "No." The answer was "Yes; at least 10 head." While the answer is not strictly and technically responsive, we think, in the nature of the case and the state of the proof, it was a substantial compliance with the spirit of the statute, and would authorize the entry of a judgment based thereon as to the 10 head actually found by the jury to have escaped through such openings.

As to the question of remittitur, this is disposed of by the holding just made, assuming that the evidence warranted a verdict for damages for at least 10 head of the escaping cattle, which will be hereafter discussed under other assignments.

In the next assignment of error in the brief it is insisted that the judgment rendered in this case on the findings of the jury is excessive, because in special issue No. 2 the jury were asked to find whether the 17 head of cattle alleged in the petition escaped through openings on the right of way, and they answered that at least 10 head had so escaped. In the next question the jury were asked to say whether plaintiff ever recovered the 17 head, and this is followed by question No. 4, in which the jury were required to find the market value of "said" cattle. The jury having found, in response to question No. 4, that the market value of "said" cattle was $300, it is urged that this answer must be construed to have been a finding by the jury that the fair market value of the entire 17 head was $300, instead of the value of the 10 head which they had found so escaped. Moreover, it is claimed that the judgment, in any event, as to the cattle alleged and found to have been lost, can only be $10/_{17}$ of the total value of the 17 head, and that the judgment is excessive in the sum of $123.53, with interest, which should be required to be remitted.

The point is persuasive and, at first blush, impressive; however, while it must be conceded that the court submitted to the jury the question of the market value of the entire 17 head, alleged to have escaped and not recovered, not having in mind that the jury would answer that only a part of them escaped through the openings on the right of way, yet the jury evidently referred in their answer to the value of the 10 head which they had found, in answer to question No. 2, had escaped through the openings on the right of way. This is made clear by the pleadings and the state of the evidence upon the question of market value. The petition alleged that 6 of the 17 head of cattle escaping and not recovered were two year old steers, worth $26.50 per head, and that the remaining 11 head were three year old steers, worth $30 per head. The testimony of appellee was undisputed that the market value of the two year old steers was from $28 to $30, and three year old steers $34.

The court in submitting question No. 4 not only asked the jury to find the value of "said cattle," referring to the 17 head, but the question also embraced the idea that they should find the value of the cattle that "did so escape through said openings or gaps."

[4] The court expressly instructed the jury that they would not be authorized to return damages for the escape of the cattle through openings not made by the construction com-

pany on appellant's right of way. When we consider the pleadings, the evidence on market value, the charge of the court, the several findings of the jury upon this subject as a whole, and the liberal rules obtaining in construing verdicts of juries, we think there can be no real doubt that the jury's estimate of $300 for the value of the lost cattle had reference to the value of the 10 head which they had previously found escaped through such openings. Taking this view of the matter, the pleadings, evidence, charge, and the findings all harmonize; whereas the contrary interpretation is at variance therewith. In support of the conclusions reached in determining the two assignments just considered, as to the proper interpretation of the jury's verdict, we cite the following authorities: Wells v. Barnett, 7 Tex. 584; Darden v. Matthews, 22 Tex. 320; Robinson v. Moore, 1 Tex. Civ. App. 93, 20 S. W. 994; Stahl v. Askey, 81 S. W. 79; City of San Antonio v. L. A. Marshall & Co., 85 S. W. 315; Rushing v. Lanier, 51 Tex. Civ. App. 278, 111 S. W. 1089; Sovereign Camp W. O. W. v. Wagnon, 164 S. W. 1082; Gibson v. Dickson, 178 S. W. 44; 20 Ency. Pl. & Prac. pp. 344, 368; 22 Ency. Pl. & Prac. pp. 877, 878, 955, 960.

This brings us to the discussion of the principal and most difficult questions involved on this appeal, which are presented in the first four assignments.

The contentions of appellant, under these assignments, may be summarized as follows: That the case should not have been submitted to the jury, but the peremptory instruction requested by appellant should have been given, because appellee relied for recovery upon the alleged violation of a statutory duty by appellant, in failing to erect cattle guards or stops at the points where its right of way entered his pastures, and there is no evidence to show that the damages sustained by appellee were proximately caused by appellant's negligence or violation of duty, in respect to either of the three items of damage submitted to the jury. It is claimed that the testimony offered upon this point is so weak as to amount to nothing more than a mere "scintilla" of evidence, and that as to the 17 head of lost cattle the testimony shows no more than that the cattle might have escaped through the openings in the fences on appellant's right of way, and does not establish that they did so escape. In short, it is urged that the evidence was insufficient to show that appellant's wrongful acts caused appellee's damages; that there was a total failure to show the extent of the damage sustained by appellee though any violation of statutory duty by appellant; and that the verdict of the jury necessarily rested upon mere conjecture or guesswork.

On the other hand, appellee contends that negligence, like any ultimate fact in issue, may be established as well by reasonable inference from other facts as by a more direct means of proof. He also maintains that in order to fix liability for an injury by tortious acts it is only necessary to show with reasonable certainty the cause from which the injury proceeds, and that the jury had the right to infer, from the testimony in this case, that appellee's loss was to some extent caused by appellant's negligence and wrongful acts. Specifically, it is claimed that in actions for tort, if it is impossible to distinguish between the damages arising from the wrong or injury complained of and damage which has another origin, the jury should be permitted to make the best estimate in their power, from the best evidence that the nature of the case admits of, and award compensation accordingly; and that the difficulty of separating the damages due to different causes will not operate to deny a recovery for substantial damages.

The difficulty lies, not so much in determining the correct legal principle determinative of these questions, but in the application of the rules to the facts of this case. Perhaps as fair a statement of the law as any to be found is that announced in 17 Corpus Juris, pp. 755–757. It is there stated that—

"Where it is not shown with reasonable certainty that the harm or loss resulted from the act complained of, there can be no recovery of compensatory damages therefor. This, however, is but a statement in another form of the rule requiring that damages be the natural and proximate consequences of the wrongful act."

After pointing out that the rule against the recovery of uncertain damages generally has been directed against uncertainty as to cause rather than uncertainty as to measure or extent, the same authority states this rule:

"Where the evidence clearly shows some substantial damages to which plaintiff is entitled, he is not confined to a recovery of mere nominal damages by a failure to show as to all of the items of damages that defendant was responsible therefor; and in the case of concurrent torts by several the difficulty of ascertaining with exactness the proportion of damage caused by each tort-feasor is not a ground for denying the right to recover a substantial sum, where the best evidence of which the case is susceptible, reasonably tending to show the relative proportion, is adduced."

Appellant cites several authorities in its brief, including Telegraph Co. v. Brown, 62 Tex. 540, Weed v. Ry. Co., 21 Tex. Civ. App. 689, 53 S. W. 357, Fleming v. Pullen, 97 S. W. 110, and St. Louis Cattle Co. v. Cholson, 30 S. W. 269, tending to support the rule that where a loss is not shown with reasonable certainty to have resulted from the wrongful acts of the defendant, no recovery will be allowed. An examination of the facts of these cases, however, will show that none of them is conclusive in the present

case, because of the difference in the facts. In the Cholson Case, for instance, it was stated by the court that it was largely a matter of conjecture and speculation as to what the death rate of the cattle would have been had not the defendant torn down and removed plaintiff's fence, and that the death of 125 cattle, or any other number, as a result of defendant's wrongdoing, was a contingency too remote and uncertain to submit to the jury. It is also pointed out in that case that no effort was made, either by direct or circumstantial evidence, to approximate the number.

Appellee in his brief cites numerous cases, chiefly: Bennett v. G., C. & S. F. Ry. Co., 159 S. W. 132; 8 Am. & Eng. Enc. of Law (2d Ed.) pp. 610, 611; 17 Corpus Juris, 755, 756: Ogden v. Lucas, 48 Ill. 492; Gould v. McKenna, 86 Pa. 297, 27 Am. Rep. 705; Jenkins v. Penn. Ry. Co., 67 N. J. Law, 331, 51 Atl. 704, 57 L. R. A. 309; Larned v. Castle, 78 Cal. 454, 18 Pac. 872, 21 Pac. 11; Scheurer v. Banner Rubber Co., 227 Mo. 347, 126 S. W. 1037, 28 L. R. A. (N. S.) 1207, 21 Ann. Cas. 1110; Allison v. Chandler, 11 Mich. 542; and Gilbert v. Kennedy, 22 Mich. 117.

It is claimed by appellant's counsel that none of these authorities is in point, because they merely hold that an uncertainty as to the manner or extent of damages in an action for tort does not defeat recovery, and that the amount of damages may be fixed by the jury in the exercise of sound and reasonable discretion; whereas the question in this case is not the amount or extent of the damages, but whether there is any evidence to show that any of appellee's damage or loss was caused by appellant's negligence or breach of duty.

It must be confessed that an examination of appellee's authorities will show that they are largely to the effect as contended by appellant. The facts in most, if not all, of them, do not involve the question of an uncertainty as to cause, except that they involve damages resulting from separate and independent causes, concurring in the total injury or damage inflicted. However, the purposes of this inquiry will be aided by brief quotations from some of these cases, announcing principles which are thought to be applicable to the facts of the instant case.

In Jenkins v. Penn. Ry. Co., supra, Justice Pitney used this language:

"It is obvious that, if the property owner must be confined to nominal damages in such a situation, it is the same in effect, as to say that he is entitled to no recovery. In our opinion, this is not the law. The situation is one that is not very unusual in actions of tort. It many times happens that the damage arising from an actionable injury chargeable to the defendant is, in the nature of things or from the circumstances of the cases, indistinguishable from other damages occurring at the same time, attributable to the acts of an independent tort-feasor or to natural causes. In such cases, since the injured party cannot supply the materials necessary to enable the jury to make an exact computation of the damages in suit, the approved practice is to leave it to the good sense of the jury, as reasonable men, to form from the evidence the best estimate that can be made under the circumstances as a basis of compensatory damages for the actionable injury."

In Allison v. Chandler, supra, Judge Christiancy, among other things, said:

"The law does not require impossibilities, and cannot therefore require a higher degree of certainty than the nature of the case admits. And we can see no good reason for requiring any higher degree of certainty in respect to the amount of damages than in respect to any other branch of the cause. Juries are allowed to act upon probable and inferential, as well as direct and positive, proof. And when from the nature of the case the amount of the damages cannot be estimated with certainty, or only a part of them can be so estimated, we can see no objection to placing before the jury all the facts and circumstances of the case having any tendency to show damages or their probable amount, so as to enable them to make the most intelligible and probable estimate which the nature of the case will permit."

[5] In respect to cause or causes of damage, we see no difference in principle from a question of the nature or extent of the damages; and think that the rules just quoted are applicable, at least where the proof tends to show with reasonable certainty that some of the loss has resulted from the negligence of the defendant. In this case, whatever uncertainty may exist as to the proportion in which appellant's negligence and that of other parties contributed to cause appellee's loss, it was occasioned, in part, by appellant's negligence and wrongdoing, and as said in Gilbert v. Kennedy, supra: "Justice and sound policy alike require that it should bear the risk of the uncertainty thus produced."

[6] When the facts are carefully examined, we think that sufficient evidence will be found in the record to show that appellee, with reasonable certainty, proved a part, at least, of his damage was caused by appellant. It will be sufficient to recite these facts and circumstances: That until appellant began to construct its roadbed through the pastures none of appellee's cattle has been escaping, and no others had been getting in. Appellee and at least one other witness testified to having seen cattle go in and out of the pastures through gaps left in the fences on appellant's right of way, and numerous tracks were shown to have been found at these places. On the other hand, no witness testified to having seen any cattle come in or go out the pastures through any other gaps or openings, or to have seen any tracks at any other openings. There is ample evidence to show, with approximate certainty,

the extent of appellee's damages, and to sustain the jury's verdict as to amounts. The jury were expressly instructed not to allow any damages for cattle escaping through other openings. In view of this instruction and the testimony, direct and circumstantial, we cannot say that the jury were not warranted in finding that at least 10 of the escaping cattle went through the gaps or openings for which appellant was responsible, and in awarding damages therefor, as well as in the other items of recovery. The proof was as certain as the circumstances and nature of the case would admit, and authorized the inferences found by the jury. It is true that the evidence did not show conclusively, or even positively, that any particular number of the 17 head of cattle escaped through openings on the right of way, and that it is possible all of them may have escaped elsewhere. On the other hand, it is possible, and not at all improbable, that they all escaped through the openings on the right of way. The jury, uncertain upon this point, apportioned the loss, finding that at least 10 out of the 17 head went through the openings attributable ot appellant. There was some testimony that there was a break on the north side of the pasture, and a gate on that side which was sometimes left open, and one witness testified to having seen 7 head of appellee's cattle outside the pasture north of said side, and, the testimony not showing that they were ever recovered, it may be that this accounts for the jury's having divided the loss, so as to hold appellant accountable for at least 10 head.

The question is regarded by us as close, but viewing the testimony, both direct and circumstantial, as a whole, we believe the jury were justified in the verdict rendered, and that we are not warranted in disturbing it.

Finding no reversible error in the record, the case is affirmed.

Affirmed.