## ADAMSON LUMBER CO. v. J. E. KING LUMBER CO. (No. 607.)

(Court of Civil Appeals of Texas. Beaumont. Jan. 25, 1921. Rehearing Denied Feb. 16, 1921.)

1. Evidence ⬤⟲460(11)—Testimony as to sale of lumber to persons other than defendant admissible to explain contract.

Where by written contract defendant agreed to purchase and plaintiff to sell all of a certain grade of lumber at plaintiff's mill and to be cut, except local bills, testimony by officers of plaintiff, explaining that lumber sold to third persons was not at the mill, but was at a railroad siding at the time the contract was made, was admissible to explain its terms, and could not̃ be objected to on the theory that it tended to vary the terms of a written contract.

2. Trial ⬤⟲365(1)—Special verdict held properly construed on theory that payment did not apply to last lumber sold.

In view of the pleadings and evidence, held that the trial court was warranted in construing the jury's answer to a special interrogatory that defendant had paid $1,500· as dealing with lumber already sold and delivered, and not applicable to the purchase price of lumber thereafter sold, and hence the denial of credit was not error.

3. Trial ⬤⟲355(2)—Special verdicts held sufficiently certain on which to base judgment.

In an action for the price of lumber sold, where defendant asserted that verdict of the jury was too uncertain, special verdicts held sufficiently certain on which to base judgment.

4. Appeal and error ⬤⟲930(3)—Presumption that trial court found facts in favor of plaintiff, where special verdict insufficient.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1985, held that, though the special verdict was insufficient, yet where the·court rendered judgment for plaintiff on the special verdict the judgment must be upheld, being supported by the testimony; it being assumed that the court found in favor of plaintiff facts necessary to support the judgment.

Appeal from District Court, Sabine County; W. T. Davis, Judge.

Action by the J. E. King Lumber Company against the Adamson Lumber Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Hamilton & Hamilton, of Hemphill, and Brooks, Worsham & Rollins, of Dallas, for appellant.

Minton & Lewis, of Hemphill, for appellee.

O'QUINN, J. Appellee, J. E. King Lumber Company, brought this suit against appellant, Adamson Lumber Company, for the sum of $2,096.14, alleging the same to be due for 131,009 feet of lumber delivered to appellant in pursuance of the following contract:

"The State of Texas, County of Sabine. This memorandum of agreement made and entered into by and between Adamson Lumber Company of Kauffman county, Texas, party of the first part, and J. E. King Lumber Company of Sabine county, Texas, party of the second part, witnesseth: That party of the first part̕ hereby agrees to purchase all of the yard stock consisting of pine lumber which will grade number two and better now at the mill of the party of the second part about 2 miles east of the town of Hemphill and such further amount as may be cut and delivered by the party of the second part, and to check the lumber off the wagons at the mill of the party of the first part now located about one mile north of the town of Hemphill, and to pay therefor the sum of $16.00 per thousand feet on the 1st and 15th of each month immediately following the deliveries.

"The party of the second part agrees to sell its stock of No. 2 and better lumber now on hand and such as may be cut by it, except such local bills as it may desire to sell in the rough and such other rough timbers as it may desire to ship in the rough.

"Party of the second part agrees to sell the lumber herein mentioned at the prices stated and to make deliveries thereof as rapidly as may be conveniently done, and party of the first part agrees to accept same as delivered.

"Witness our hands in duplicate at Hemphill, Texas, this the 6th day of June, A. D. 1918. Adamson Lumber Co., per T. W. Adamson, Party of the First Part. J. E. King Lbr. Co., H. M. Maund, Party of the Second Part."

---

⬤⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appellee attached to its petition, as an exhibit, an itemized statement, showing the kind and amount of lumber with date of delivery, duly verified, and also sued out writ of attachment, and had same levied on 87,000 feet of lumber on mill yard of appellant, with prayer for judgment for its debt, and foreclosure of the attachment lien.

Appellants answered: (1) Admitting the execution of the contract; (2) denying that it had purchased any lumber from appellee below the grade of No. 2, and alleging that it had received from appellee 28,000 feet of lumber that had been shipped to Kauffman, Tex., that was of the grade No. 3, worth ohly $8 per thousand, and 30,000 feet of No. 3 that appellant had planed and stacked on its millyard, at a cost of $4 per thousand for planing and $1 per thousand for stacking, which appellant held subject to the order of appellee, and which appellant was willing to turn over to appellee, and asked credit for $150 against the account sued ·on for planing and stacking same; (3) that appellee, in violation of said contract, had sold and delivered to other parties 60,000 feet of lumber that should have been delivered to appellant, which was worth $6 per thousand above the contract price, to its damage $360, for which it asked credit on said account; and (4) that it had paid appellee $1,500 on said account that had not been credited, and for which it asked credit, and further alleged that if all of said amounts were credited, it would owe appellee nothing.

Appellee replied to appellant's answer, denying that it had delivered to appellant any lumber of grade No. 3, but that all the lumber delivered was of grade· No. 2, and was accepted by appellant as· such, and denying that it had sold or delivered to other parties any lumber to which, under the said contract, appellant was entitled, and that the $1,500 alleged by appellant to have been paid was paid for lumber delivered prior to that shown in appellee's petition, and not sued for herein.

The case was tried before' a jury upon special issues of which the material ones, together with the answers thereto, are as follows:

"Question No. 1: Did the plaintiff deliver to the defendant. all of the lumber described in the itemized account attached to the first amended original petition and marked 'Exhibit A'? You will answer this question Yes or No. Answer: Yes."

"Question No. 3: Was all of the lumber delivered by plaintiff to the defendant 'number two and better,' at the time of the delivery? You will answer this ·question Yes or No. Answer: Yes."

"Question No. 5: Did the defendant accept the lumber, if any you have found at the time of delivery was below the grade of No. 2 and better, as being No. 2 and better, in compliance with the terms of the contract introduced in evidence before ·you? You will answer this question Yes or No. Answer: Yes.

"Question No. 6: At the time said lumber was delivered was it agreed between the plaintiff and defendant that all of the lumber delivered by plaintiff should be unloaded and run through the defendant's planer, and that the plaintiff would pay the defendant the reasonable cost of dressing and stacking all lumber not of the grade No. 2 and better for plaintiff's account? You will answer this question Yes or No. Answer: No."

"Question No. 9: Has the defendant paid the plaintiff at the rate of $16 per thousand feet for all the lumber delivered to it by the plaintiff which graded No. 2 and better at the time of delivery? You will answer this question Yes or No. Answer: No.

"Question No. 10: Did the defendant pay the plaintiff at the rate of $16 per thousand feet for all the lumber delivered to it up to July 7, 1918? You will answer this question Yes or No. Answer: No.

"Question No. 11: How much money from the evidence, do you find, that the defendant paid the plaintiff, on account of the lumber actually delivered? You will answer this question in dollars and cents. Answer: $1,500."

"Question No. 13: After June 6, 1918, did the plaintiff sell and deliver to others than the defendant, Adamson Lumber Company, lumber of the grade No. 2 and better, which it had on hand June 6, 1918,, or which it afterwards cut? In answering this question you will not consider any sale of local bills which the plaintiff might have sold in the rough, or any sale of rough timbers which the plaintiff might have sold in the rough. Bearing this instruction in mind, you will answer this question Yes or No. Answer: Yes.

"Question No. 14: If you have answered question No. 13, Yes, then you will answer the following question: How many feet of such lumber do you find from the evidence that the plaintiff sold after June 6, 1918, to others than the defendant, Adamson Lumber Company? You will answer this question stating the number of feet. Answer: 60,000 feet.

"Question No. 15: If you have answered question No. 13 Yes, then you will answer the following question: Did the defendant, Adamson Lumber Company, agree that such lumber might be sold and delivered by plaintiff? You will answer this question Yes or No. Answer: Yes."

Both plaintiff and defendant filed motion for judgment on the findings of the jury, that of the defendant being refused, and judgment was entered for plaintiff for the full amount of its claim, and for foreclosure of its attachment lien.

[1] Appellant's first assignment of error assails the verdict of the jury in answer to special issue No. 15, on the ground that same was not supported by competent evidence, in that plaintiff had declared on a written contract and sought to vary same by parol proof of defendant's consent to a sale of No. 2 lumber by plaintiff to persons other than defendant, and contending that the witnesses Rogers, Maund, and King, offered by plaintiff

to make such proof, should not have been permitted to testify to such fact, and that the court should not have submitted said issue to the jury. That part of the contract bearing on this issue is as follows:

"That party of the first part (defendant) agrees to purchase all of the yard stock consisting of pine lumber which will grade No. 2 and better now at the mill of the party of the second part (plaintiff), and such further amount as may be cut and delivered by the party of the second part." "The party of the second part agrees to sell its stock of No. 2 and better lumber now on hand and such as may be cut by it, except such local bills as it may desire to sell in the rough and such timbers as it may desire to ship in the rough." (Parentheses our own.)

The evidence showed that the lumber complained by defendant to have been sold by plaintiff to others was not "at the mill" of plaintiff on June 6, 1918, the date the contract was made, but was some mile and a half from the mill on a railway ·switch, stacked for shipment on orders received prior to the making of said contract, and hence, under the very terms of the contract, was not included in same. The defendant in its answer having pleaded that after the execution of said contract plaintiff had sold and · shipped three cars of lumber to persons other than ,defendant, that defendant was entitled to under said contract, and plaintiff in its replication to said answer having denied same, it became and was an issue of fact raised by the defendant, and the testimony was properly admitted for the purpose of meeting said allegation, and enabling the court and jury to determine whether said lumber was included in said contract. It was not introduced for the purpose of varying ,the terms of a written contract, but to show what the contract really was, and that the lumber in question was not embraced by the contract. Houston Transfer Co. v. Lee, 97 S. W. 842; Armstrong v. Wilson, 109 S. W. 955.

[2] By its second assignment of error appellant contends that the court erred in not allowing defendant credit for $1,500 against the account and judgment for plaintiff, insisting that the jury found in answer to special issue No. II that defendant had paid that amount to plaintiff on the lumber described in Exhibit B, attached to plaintiff's petition, and for which suit was brought, and that in the face of such finding the court had granted judgment for the full amount sued for by the plaintiff.

Special issue No. II, as submitted by the court, was as follows:

"How much money from the evidence, do you find, that the defendant paid the plaintiff, on account of the lumber actually delivered?"

The jury answered "$1,500.00." It will be observed that the question did not ask how much lumber had been delivered from and after any specified date, but how much actually delivered; and, inasmuch as there was testimony as to the delivery of all the lumber from June 6, 1918, the date of the contract, up to and until in July, the deliveries being made during both June and July, and the plaintiff contending that defendant had paid only for the lumber delivered in June, and the defendant claiming to have paid up to July 7th, and the jury having found in answer to special issue No. 10 that defendant had not paid for "all the lumber delivered up to July 7, 1918," and the evidence also showing that, as defendant paid for lumber delivered, the wagon checks or tickets given therefor by defendant were delivered to defendant, and that this suit did not embrace any lumber except that shown by the wagon checks or tickets held by plaintiff, and that none of same had been paid, we think it fairly deducible from the pleadings and evidence that the verdict of the jury meant that defendant had paid the sum of $1,500 on the whole amount of lumber received by it, and not on the particular lumber involved in this suit. The learned judge who tried the case, with all the facts and charge of the court before him, gave the verdict this construction, and in this we do not think he erred. We think, under the pleadings and the evidence, the verdict is sufficiently certain upon which to base the judgment, and that same is supported by the proof, and that no error was made by the court in rendering judgment.

The appellant, in its third assignment of error, complains that the court erred:   (1) In refusing to allow defendant a credit of $360 against any judgment awarded plaintiff, that being the difference between the contract price and the market value of 60,000 feet of lumber which the jury found in their verdict in answer to issue No. 14 plaintiff had sold to persons other than defendant; (2) in rendering judgment for the total value of the lumber described in plaintiff's petition, for the contract price of $16 per thousand, and not allowing defendant a credit of $1,500, which the jury found had been paid; and (3) for the lumber delivered to Rogers.

The evidence showed that four ·loads of lumber were delivered to the defendant on the day that the contract was made, but that tickets for same were not delivered to plaintiff until about July 27, 1918, when Lee Lord, witness for defendant, and who, the testimony shows, was acting for defendant, after investigation made and gave them to plaintiff, and so could not have been delivered to Rogers, or paid for in the June deliveries covered by the $1,500. Our holding in disposing of appellant's first and second assignments of error disposes of the remainder of this assignment.

[3] In his fourth assignment of error, ap-

pellant complains that the verdict of the jury is too uncertain, and not sufficient upon which to base a judgment determining the amount due and unpaid, and contends that same should have been set aside and a new trial granted.

[4] We are of the opinion that the verdict is sufficient, and fully supports the judgment of the court. But if we are wrong in this conclusion, then, as the judgment was rendered by the court for appellee on this verdict, it follows that the court found in favor of appellee the facts necessary to support the judgment, and, as the testimony, as shown by the record, supports the judgment, we think the assignment should be overruled. Article 1985, V. S. Civ. Statutes.

Finding no reversible error in the record, the judgment is affirmed.