PICKRELL et al. v. IMPERIAL PETROLE-
UM CO. et al.  (No. 1779.)

(Court of Civil Appeals of Texas. Amarillo.
April 20, 1921.  Rehearing Denied
June 1, 1921.)

1. **Evidence ⬀571(7)—Jury are not bound by opinion based on disputed facts.**

In an action for deceit in the sale of an oil lease, the jury are not bound as to the value of the lease by the opinion of the only witness who testified to such value, where the facts on which the opinion was based were disputed.

2. **Evidence ⬀571(7)—Jury are not bound by opinion of interested witness.**

In an action for deceit the jury are not bound to accept the opinion of an interested witness as to the actual value of the property sold, though no other witness expressed an opinion as to such value.

3. **Trial ⬀365(1)—Verdict must be construed in light of circumstances.**

A special verdict rendered by the jury must, like many other instruments, be construed in the light of the surrounding circumstances.

4. **Judgment ⬀256(2) — Trial ⬀365(1) — Special answer held to find value of entire lease not merely of interest in controversy; judgment erroneous as not conforming to special findings.**

In an action for deceit in the sale of an undivided seven-sixteenths interest in an oil and gas lease, an answer by the jury to a special issue as to the reasonable market value of the lease and the wells at the time the contract was made by its language refers to the value of the lease as an entirety, and is not limited to the interest in controversy by the fact that the pleadings and evidence related only to such interest so that it was error to render judgment for plaintiff on the basis that the value stated was the value only of the interest in controversy.

5. **Mines and minerals ⬀74 — Purchaser of lease ratifying contract by suing for deceit is liable for interest on purchase-money notes.**

Where a purchaser, who was induced by fraud to buy an oil lease in part payment for which he executed notes bearing interest at a stipulated rate, thereafter elected to ratify the contract by suing for damages for the deceit, he is liable for the interest on the purchase-money notes as well as the principal, against which he is entitled to set off the damages occasioned by the deceit.

6. **Mines and minerals ⬀74—Vendor held entitled to attorney's fee on purchase-money notes notwithstanding fraud in sale of lease.**

Where a purchaser of an oil lease executed notes for a portion of the purchase price which stipulated for an attorney's fee, the vendor is entitled in an action against him for deceit in which the purchaser did not recognize the obligation of the notes to claim the attorney's fee provided for by the notes, though the purchaser recovers damages for deceit, which are to be offset against his liability for the balance of the purchase money.

7. **Assignments ⬀120—Buyer of notes pending suit thereon can prosecute suit in name of seller.**

The buyer of purchase-money notes pending suit between the vendor and the purchaser can prosecute the suit in the name of the vendor without becoming a party thereto.

On Motion for Rehearing.

8. **Appeal and error ⬀1177(8)—Judgment not rendered on verdict on ambiguous issue.**

Where the language of an issue submitted to the jury indicated that the jury found the value of an oil lease as an entirety, and not the value of the interest in controversy, but the trial court, which knew the arguments made upon such issue, construed it as a finding of the value of the interest in controversy, the Court of Appeals will not render a judgment on the issue as a finding of the entire value, which would preclude appellee from showing that the jury intended the contrary, but will remand the case for a new trial.

Appeal from District Court, Wichita County; Edgar Scurry, Judge.

Suit by Frank T. Pickrell and another against the Imperial Petroleum Company and others to recover damages for deceit in the sale of an oil lease. Judgment for the plaintiffs for a part only of the amount claimed, and they appeal. Reversed and remanded.

Kay, Akin & Kenley, of Wichita Falls, and McKenzie & Loose, of El Paso, for appellants.

Weeks, Morrow & Francis, of Wichita Falls, for appellees.

BOYCE, J. Appellants, Pickrell and Krupp, brought this suit against appellee Imperial Petroleum Company to recover damages for deceit in the sale by the Petroleum

(231 S.W.)

Company to the plaintiffs of an undivided seven-sixteenths interest in and to a certain oil and gas lease on five acres of land in Wichita county, Tex. There were two oil-producing wells on the land at the time of the contract for sale, and the basis of the suit was alleged false representations made as to the condition and producing capacity of these wells. The jury found that certain false representations as to the condition of the wells had been made by defendants and relied upon by the plaintiffs. The language of the submission of issue No. 6 furnishes the ground of one of the principal contentions on this appeal. The issue and its answer are as follows:

"Special issue No. 6: What was the reasonable market value of the lease and the wells at the time and in the condition you find such wells to have been in at the time the contract was made? Answer: $120,000."

The appellants had agreed to pay $160,000 for the seven-sixteenths interest in the lease, and the judgment entered by the court allowed the plaintiffs the sum of $40,000 damages for deceit. Such other of the proceedings and facts in the record of the trial court as is necessary to an understanding of the opinion will be stated in connection with the decision of the particular points raised.

Appellants first contend that the finding of the jury as to the value of the lease is not supported by the evidence; that the trial court was bound to accept what appellants contend is the undisputed evidence, to the effect that the value of the seven-sixteenths interest in the lease sold to the plaintiffs was the sum of $21,875. This evidence consisted of the opinion of the plaintiff Pickrell, and since the exact language used in the giving of this testimony may be material in the decision of another question, discussed later, we will quote it. The witness says:

"I was familiar with the market value of oil leases as to the flush production and settled production on November 18, 1919. From my knowledge of the condition of that well up there, up to the time of the bringing of this suit, wells No. 1 and No. 2 in that lease out there, I would know the market value of that lease in the condition in which it was in on November 18, 1919. The reasonable value, market value, of that lease at that time would be not more than $45,000 or $50,000. That was the full value of the lease. The seven-sixteenths interest would be about $20,000 or $21,000. It would be seven-sixteenths of the $45,000 or $50,000, whichever one of the two was the market value. * * * From my knowledge now I do say that the interest we bought in this property was worth on the market at the time we bought it not to exceed $20,000 or $21,000."

[1, 2] There was testimony to the effect that the wells had been represented as being in good condition, with the flush oil still in them and capable of producing from 2,000 to 2,500 barrels of oil per day, and that they were shut down at the time of the making of the contract on account of lack of facilities to handle the oil. The plaintiffs' evidence tended to show: That well No. 1 was at the time of the execution of the contract "making salt water," and this increased until soon thereafter it was producing only salt water; that the casing in well No. 2 had been raised by gas pressure, and when the gas pressure was released it failed to go back to its seat by about 10 inches, and this was its condition at the time of the contract; that when the well was opened, soon after the sale, it also produced salt water. The defendant's testimony, on the other hand, tended to show that the wells were, at the time of the sale, each capable of producing from 600 to 1,100 barrels of oil per day and had produced no salt water; that the production of salt water in the wells was the result of accidents in swabbing out and putting liners in the wells after the plaintiffs took charge of them. The jury were not bound to accept Pickrell's opinion as to the value of the lease. This opinion was based on the theory that the wells were in the condition detailed by plaintiffs' witnesses, and, as we have seen, this was a matter of dispute. But, even if there were no dispute as to the facts, the opinion of an interested witness need not be accepted absolutely. Buchanan v. Bowles, 218 S. W. 652, and authorities; City of Ft. Worth v. Burgess, 191 S. W. 864.

[3, 4] It is next contended that the court erred in construing the finding of the jury in answer to the sixth special issue, quoted above, to mean that $120,000 was the value of the seven-sixteenths interest in the lease rather than the value of the entire lease, and in entering judgment on such construction of the verdict. A verdict of a jury, we take it, is, like the language of any other instrument, to be construed in the light of the surrounding circumstances (Gibson v. Dickson, 178 S. W. 48; Rushing v. Lanier, 51 Tex. Civ. App. 278, 111 S. W. 1090; G., C. & S. F. Ry. Co. v. Baker, 218 S. W. 12; Adamson Lumber Co. v. King Lumber Co., 227 S. W. 702; Crenwelge v. Ponder [Com. App.] 228 S. W. 145), and we may look to the record to determine what these circumstances were. The contract sued on provides for the sale, transfer, and assignment of "an undivided seven-sixteenths interest in and to a certain oil and gas lease" on the said five acres of land which were particularly described, "said lease being a part of a certain parcel or tract of land, * * * with field notes set out in a certain oil and gas lease duly recorded," etc. The contract further provided:

That "the proceeds from 75 per cent. of seven-sixteenths of the oil runs from the above-de-

scribed leasehold estate" should be paid to the First National Bank of Wichita Falls, to be applied on the purchase price agreed to be paid for said seven-sixteenths interest; that "it is further understood and agreed that there are now two oil wells upon said above-described leasehold estate"; that the purchasers "shall take charge of said lease from and after the date hereof, * * * and that such oil as is' now in storage on said lease at this time shall belong to" the Imperial Company; that the vendors "now have a certain contract and agreement with the Sinclair-Gulf Pipe Line Company, relative to the running of oil from said leasehold estate, and it is understood and agreed that the first party will transfer and assign said contract to second parties along with the leasehold estate"; that "second parties take said lease subject to a certain assignment made on the 14th day of May, 1919, by D. C. Brunson, M. G. Hickman, and A. P. Lever, trustees of the Burk-Brunson Calloway Oil Company, a joint-stock association, covering the above-described leasehold estate," and that said parties agree to carry out the obligations imposed by virtue of said assignment and comply with all the conditions "set forth in the original lease upon said property"; that "a copy of this contract, along with a valid and bona fide assignment of said oil and gas lease," shall be placed in escrow with agreement for delivery, as particularly set out.

The plaintiffs' petition begins with a statement that the defendants had entered into an executory contract with plaintiffs for the sale of "an undivided seven-sixteenths interest in and to an oil and gas lease" upon said five acres of land. The contract is then described, and the petition thereafter, in many places, refers to the transaction generally as a sale of an oil and gas lease. In the allegations of the fraudulent representations made by the defendants it is alleged, among other things:

That one of the defendants fraudulently represented "that the two alleged wells upon said oil and gas lease were good oil wells; * * * that the production of oil from seven-sixteenths of the oil and gas lease owned by defendants would pay more than all of the deferred payments; * * * that the seven-sixteenths interest of said oil and gas lease, as owned by the defendants, was actually worth more than $200,000; * * * that the plaintiffs' income would be very large from the production of said seven-sixteenths from said well; that, if they purchased said seven-sixteenths interest in said oil and gas lease, the production therefrom would net the plaintiffs, at the very lowest, $1,500 per day; * * * that defendants represented to the plaintiffs that a test of said two alleged wells on said oil and gas lease could not be made; * * * that defendants represented that said oil and gas lease and the two wells thereon to be the best in the northwest field."

There are also some references in the defendants' answer to the "seven-sixteenths interest" sold by the defendants to the plaintiff. The case was submitted on special issues, and the court prefaced the submission of the issues as to false representations by this general language:

"Did the defendant L. J. Bryan make the following representations to plaintiffs when they were negotiating for the contract?"

Issue No. 1 inquires whether it was represented "that the two alleged wells upon said oil and gas lease were good oil wells," etc. Issue No. 5 required a finding as to whether it was represented by the defendants that "said two alleged wells, 1 and 2, upon said oil and gas lease, were in good condition for immediate operation, and that they had a contract with the Sinclair Gulf Pipe Line Company whereby, commencing on December 1, 1919, to take all the oil from the said oil and gas lease," etc. We have already quoted special issue No. 6, which furnishes the ground of the controversy presented by this assignment. We have also already quoted the only direct evidence that was given as to the value of the lease, or the seven-sixteenths interest therein. The only other evidence suggested by either party that might have any bearing on this matter is the testimony of the witnesses Pickrell and Bryan, as follows: The witness Pickrell testified:

"This interest that we bought from the Imperial Petroleum Company was a working interest. There was an overriding royalty or seven-sixteenths owned by somebody else. That was owned by Burk-Bronson & Calloway. * * * As to whether I knew that we were taking over the interest of the one who was charged with the drilling of the wells, we were taking over the interest of the one who was operating the wells."

The witness Bryan testified:

"The lease is one of those regular seven-eighths working interest and one-eighth royalty interest, and they acquired seven-sixteenths in it in consideration that they operate it and drill it."

It will thus be seen that throughout the proceedings a distinction was maintained, though not with entire consistency between the oil and gas lease as an entirety and the seven-sixteenths undivided interest which was the subject of the contract. The language of the submission of issue No. 6 would, taken literally, refer to the lease as an entirety, and we do not think that the record is sufficient to warrant a holding that it should be otherwise construed. It is true that the evidence last above referred to makes it appear that the value of the seven-sixteenths interest, which was the subject of the sale, could not properly be mathematically determined from a finding of the value of the entire lease, but the witness Pickrell had figured it in that way in the presence of the jury. The fact of the impropriety of the action of the court in submitting an issue which could not properly form the basis of a judgment is not, un-

der the circumstances, convincing that a construction opposed to the natural and literal meaning of the language should be adopted or that it was adopted by the jury. We conclude that there was error in the entry of the judgment based on this construction of the finding, and the case should be reversed for this reason. We do not think, however, that we should render judgment for the plaintiffs. The trial court evidently thought that the jury understood the finding to be as to the value of the seven-sixteenths interest. The language used under all the circumstances was likely to lead to confusion and misunderstanding. There is such uncertainty as to the meaning of the verdict that we do not feel warranted in rendering a judgment on it. Railway Co. v. Hathaway, 75 Tex. 557, 12 S. W. 999; Moore v. Moore, 67 Tex. 293, 3 S. W. 284.

As already stated, the consideration agreed to be paid for said seven-sixteenths interest in the lease was $160,000. Of this amount $30,000 was paid in cash, and the balance evidenced by nine notes, one payable on the 10th day of each successive month, beginning with the 10th day of January, 1920. The eight notes first maturing being for $15,000 each, and the last note for $10,000. The contract provided that the proceeds from 75 per cent. of seven-sixteenths of the oil runs from the lease should be paid to the First National Bank of Wichita Falls, to be credited upon said notes, until they were fully paid. The plaintiffs paid the first note, but failed to pay the other notes as they matured. The defendants, in their answer, set up these facts, and alleged that the notes had been placed in the hands of attorneys for collection, and prayed for judgment for principal, interest and attorney's fees due on said notes, according to the provisions thereof, and also for a foreclosure of lien on the seven-sixteenths interest in the oil and gas lease. The district judge applied the $40,000 damages, which he concluded under his construction of the verdict the plaintiffs were entitled to recover on their action for deceit, in satisfaction of the notes pro tanto as of the date of their execution and gave the defendants judgment for the balance due on the notes after such application with interest on such balance at the rate stipulated in the notes, but refused to allow the recovery of any attorney's fees on this amount. The judge also found that certain amounts, being 75 per cent. of the oil runs from said interest in said property, had been deposited in the First National Bank of Wichita Falls, and decreed that these amounts be paid to the defendants and credited on the judgment, and foreclosed a lien on the said interest in the oil lease and all oil produced by said interest on said lease from the date of the judgment. The fifth and sixth assignments complain that there were no pleadings that

would authorize the judgment in reference to the moneys in the bank, the proceeds of oil runs from the property, nor as to any oil that might be produced by the property pending the sale. There is no pleading of such matters, and there may be some doubt as to whether this part of the judgment was warranted. We need not decide the question as in view of such doubt the pleadings will doubtless be amended, and the question not likely to occur on another trial.

[5] Under the seventh assignment it is contended by appellant that the effect of the finding of the jury that the contract was induced by defendant's fraud, for which plaintiffs were entitled to recover damages, was to make the defendant's claim for recovery of any unpaid purchase price for said property an unliquidated and uncertain demand; that the defendants in such case were not entitled to recover on the contract, but only such amount as the jury found to be the value of the property at the date of the contract, less the payments that had been made; and that therefore defendants were not entitled to recover interest as provided in the notes, but only legal interest on the amount that might be found to be due from the date of the entry of the judgment. A similar question, though presenting the opposite contention, is raised by the appellees' cross-assignment, which complains of the refusal of the court to allow them the 10 per cent. attorney's fees on the balance that was found to be due on the notes. The fraudulent representations did not render the contract void, it was merely voidable; and the plaintiffs, by their action for damages for deceit, elected to affirm the contract. In such case the defendants were entitled to enforce plaintiffs' obligations under the contract, and the plaintiffs had a cause of action for damages for false representations, though by proper pleading there might be an offset in the same suit of the amounts found to be due on the respective claims of the parties. Allyn v. Willis, 65 Tex. 71; 12 R. C. L., 410; Pomeroy's Equity Jurisprudence (4th Ed.), § 915; Clark on Contracts, § 234; Scalf v. Tompkins 61 Tex. 481; Du Bois v. Rooney, 82 Tex. 173, 17 S. W. 528. In case of such offset the application thereof in this case should be made as of the date of the contract and the notes; and the defendants, if there were any balance unpaid on the notes, would be entitled to recover interest thereon from their date at the stipulated rate. Brown v. Montgomery, 19 Tex. Civ. App. 548, 47 S. W. 803; Tompkins v. Galveston St. Railway Co., 4 Tex. Civ. App. 1, 23 S. W. 25; King v. Bressie, 32 S. W. 729.

[6] Under the case as pleaded, we think also that the defendants would be entitled to recover attorney's fees on the balance that was found to be due after allowance of the offset. This would seem to result from the

application of the principles stated; and the authorities last above cited sustain this conclusion. We do not think there is any conflict in this holding with the case of Laning v. Iron City National Bank, 89 Tex. 601, 35 S. W. 1048, relied upon by the appellant. In that case the holder of certain notes brought a premature suit thereon and wrongfully levied an attachment on the debtor's property. The debtor reconvened in the suit and recovered damages in excess of the amount of the notes. The trial court allowed the plaintiff attorney's fees on the full amount that would be due on the notes without the offset and it was decided by the Supreme Court that—

"There was, in fact, at the time the notes fell due, nothing justly and rightfully due from the defendant to the plaintiff; for, although the unliquidated damages would not operate as an extinguishment of the notes, the claim could by law be so applied by the court."

In two of the cases we have cited there was a balance due after application of the offset and attorney's fees were allowed on this balance. If the plaintiffs, in bringing this suit, had recognized the binding obligation of the notes and offered to pay any balance that might be found to be due on them, if any, after ascertainment of the amount of their damages, a different case might be presented. In such case there might have been no necessity for the defendants to seek any affirmative relief on the notes; their task would have been a defense of the suit for damages. But the plaintiffs were insisting until just before the beginning of the introduction of the evidence upon a rescission of the contract. They had pleaded in the alternative for damages and filed their election to stand on their action for damages just before entering upon the trial. But even then they were denying liability on the notes and insist in this court, as we have stated, that they are not bound by the obligations of the contract. Under such circumstances we think the defendants would be entitled to the indemnity provided by the contract to cover the costs incurred in the enforcement of its obligations.

[7] If the Bryan Oil Corporation be a different person from the Imperial Petroleum Company, and if it did own the notes at the time of the trial, it would not be a necessary party to the suit. Having acquired the rights of the Imperial Company pending the litigation, it could prosecute the litigation in the name of said company. Evans v. Reeves, 6 Tex. Civ. App. 254, 26 S. W. 220.

For the reasons stated, the judgment will be reversed, and the cause remanded.

### On Motion for Rehearing.

[8] We cannot assent to the appellants' insistence that it is our duty to render judgment here on the verdict of the jury rather than to remand the cause. While, as we have held, the literal meaning of the issue submitted was not confined to the requirement of a finding as to the value of the seven-sixteenths interest in the lease, and the court was not warranted in placing such construction on the verdict and rendering the judgment accordingly, yet the record and manner of the submission of the issue is such that it is not clear that the jury understood just what was submitted to them. The issue submitted, "What was the reasonable market value of the lease and the wells, etc.?" conceding that there was no intention to limit the finding to the seven-sixteenths interest, is ambiguous. The value of the oil lease would not be the same as the value of the wells, taking the language literally. The value of the lease would be diminished by the one-eighth royalty charge due the lessor, while the value of the wells would include both the lessor's and lessee's interest. The evidence, as we have suggested, tends to show that the interest sold to plaintiffs, being an "operating" interest, might not be of the same value as an "overriding" seven-sixteenths interest owned by the Burk-Brunson & Calloway Company. It was the duty of the court to submit only issues made by the pleading and on the answer to which judgment might be rendered. The jury, composed of reasonable men, probably knew that the court was submitting issues of fact made by the pleading, and that their answers would be the basis of the judgment. They were likely to have been confused as to the meaning of this issue, and may have concluded that the court was submitting the issue made by the pleading, and which he should have submitted; that is, the value of the interest in the lease sold to the plaintiffs. The trial court knew how he understood the question and was in position to know what meaning was given to it in the argument of the case before the jury, and we must assume was impressed with the belief that the jury attached the same meaning to the issue as did the trial court. If we should render the judgment here, we would deprive the appellees of the opportunity of showing the facts as to the argument of the case, etc., as might lead to the conclusion that it would be unjust to render judgment on a construction of the issue which was not adopted in the argument of the case to the jury. There are a number of authorities which sustain us in principle in the conclusion that we ought not, under such circumstances, render judgment here. Howeth v. Anderson, 25 Tex. 557, 573, 78 Am. Dec. 538; H. & T. C. Ry. Co. v. State, 24 Tex. Civ. App. 117, 56 S. W. 231, concluding sentence of opinion; Gose v. Coryell, 59 Tex. Civ. App. 504, 126 S. W. 1168. In Howeth v. Anderson, the Supreme Court said:

"The view we have taken of the case would lead to the rendition of judgment for the de-

fendants upon the verdict, but, as that might deprive the plaintiff of having the case revised upon the evidence, as he might have done had the judgment been adverse to him in the court below, and he might suffer an injustice by the case taking a direction which he was not bound to anticipate, the judgment will be reversed and the cause remanded for further proceedings."

So in this case, if the trial court had finally adopted the construction of the verdict insisted upon by appellants, appellees would have had an opportunity of presenting in a motion for new trial, all the facts which would make it inequitable for the court to render a judgment upon such construction and a rendition of the judgment here would deprive them of this opportunity. In the case of Moore v. Moore, 67 Tex. 293, 3 S. W. 285, where there was a controversy as to the construction of the verdict, it was said:

"It may be that the court correctly interpreted the language of the jury, or it may be that they agreed only that defendant was entitled to one half the land, and failed to agree upon the issues involving the question of title to the other half. As to the true construction of such a verdict, neither the lower court nor this court is permitted to speculate. The verdict must find all the issues made by the pleadings in language which does not admit of mistake. It should be the end, and not the continuation, of the controversy."

We adhere to our former judgment, and the motion for rehearing will be overruled.